Carroll
Nos. 7353 & 7354

LEWIS M. VITTUM

v.

NEW HAMPSHIRE INSURANCE CO. & a.
GRANGE MUTUAL INSURANCE CO.

v.

LEWIS M. VITTUM & a.
WALTER RAND & a.

v.

LEWIS M. VITTUM

January 31, 1977

**2**

*James J. Kalled,* of Wolfeboro, for the plaintiff and defendant Lewis M. Vittum.

*Wadleigh, Starr, Peters, Dunn & Kohls,* of Manchester, and *James C. Wheat* (*Mr. Wheat* orally) for the defendant Liberty Mutual Insurance Company.

*Sulloway, Hollis, Godfrey & Soden,* of Concord and *Mr. Edward M. Kaplan* (*Mr. Kaplan* orally) for the defendant The Aetna Casualty & Surety Co.

*Sheehan, Phinney, Bass & Green,* of Manchester, and *James Q. Shirley* (*Mr. E. Tupper Kinder* orally) for the defendant New Hampshire Insurance Co.

*Cooper, Hall & Walker,* of Rochester (*Mr. Fred W. Hall, Jr.* orally) for the plaintiff Grange Mutual Insurance Co.

*James D. O'Neill,* of Laconia, *Colin A. Norberg,* of Meredith (*Mr. Norberg* orally) for the plaintiffs Walter Rand and Clara M. Rand.

Bois, J.   On November 8, 1972, Lewis M. Vittum, a supervisor of a Callanan Industries, Inc., road construction crew, was involved in a dispute with Walter Rand, one of his foremen. A struggle took place and Rand was injured.

The appeals transferred by the Trial Court (*Cann,* J.) basically involve liability issues arising out of this incident. The first involves petitions for declaratory judgment seeking to resolve the liability or nonliability to defend under three homeowners policies held by Vittum and one general liability policy held by the employer. Trial

by the court resulted in findings for the carriers of nonliability to defend. The second involves the denial of a motion to dismiss in an action of trespass brought by the Rands against Vittum. The motion was based on the premise that the injuries were compensable under the workmen's compensation law and that Vittum shared in Callanan's resulting immunity from suit by virtue of his supervisory position. RSA 281:12 (Supp. 1975).

The trial court's findings show that on the day of the incident, Rand was upset to find that stakes he had set on the previous day had been knocked down by the construction crew working the night shift. When Vittum arrived Rand angrily told him of his frustration and was in return told "if you don't like it, why don't you quit, you son-of-a-bitch?" Rand then "backhanded" Vittum several times through the open window of the vehicle in which Vittum was riding. Vittum got out of the car, paced around for several moments and invited Rand into the car. They both drove away to a spot 1,500 feet away from the job site and got out. A fight followed during which Vittum landed several punches and clubbed Rand on the neck with a two-by-four board. The court further found that Vittum had proceeded to the fight scene with the specific intent of settling his dispute by means of physical force, that his blows had been intentional, and that the injuries were the natural and foreseeable consequences of the blows.

Rand first sought compensation for his injuries through the workmen's compensation act. Benefits were denied by the deputy labor commissioner and no appeal was taken. Rand then instituted the instant tort action for assault. Vittum filed a motion to dismiss contending that (1) Rand's injuries were compensable under the workmen's compensation act and; (2) that Vittum was the "alter ego" of the company and thus entitled to share in the company's statutory immunity. The trial court denied the motion, and found that the assault by Vittum on Rand in fact did arise out of a work matter, job-related and the injuries sustained were compensable, but it rejected Vittum's contention that he was Callanan's alter ego.

The findings made by the trial court cannot be said to be clearly erroneous and thus will not be disturbed on appeal. *Iafolla Indus., Inc. v. Curran-Cossette Constr. Corp.*, 116 N.H. 850, 368 A.2d 1175 (1976); *Spectrum Enterprises, Inc. v. Helm Corp.*, 114 N.H. 773, 329 A.2d 144 (1974); *Streeter v. New Eng. Box Co.*, 106 N.H. 146, 207 A.2d 423 (1965).

The first issue involves the finding by the court that various conditions and exclusions in the policies rendered all four insurers free of any liability.

■ We are dealing with the construction of a contract made between private parties so we have no need to consider the implementing of some remedial legislative goal as we would if we were dealing with the workmen's compensation law. *Newell v. Moreau,* 94 N.H. 439, 442, 55 A.2d 476, 479 (1947).

■ The insurance contracts exclude from coverage personal injuries intentionally caused by the insured. Vittum proposes that such an exclusion embodies a distinction between intended acts and intended injuries, and that only the former were intended in this case. The findings by the trial court that the injuries inflicted were intended, being supported by the evidence, are accepted, and thus the distinctions urged upon us are deemed irrelevant. In addition, it is apparent that the argument misconceives the meaning of "intent" in the law of torts. Intent is not limited to consequences which are desired. "If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result." Restatement (Second) of Torts § 8A, Comment b (1965).

The cases relied upon by Vittum involve situations where the consequences of the actor's conduct are less than probable, *Morrill v. Gallagher,* 370 Mich. 578, 122 N.W.2d 687 (1963), or otherwise fortuitous, *Smith v. Moran,* 61 Ill. App. 2d 157, 209 N.E.2d 18 (1965), or in which the actor, by virtue of minority age or some other factor, cannot meaningfully be said to have caused the consequences of his acts. *Connecticut Indem. Co. v. Nestor,* 4 Mich. App. 578, 145 N.W.2d 399 (1966); *Putman v. Zeluff,* 372 Mich. 553, 127 N.W.2d 374 (1964). The injuries suffered by Rand were the natural consequence of an assault by a blow from a two-by-four and cannot be said to have been improbable or fortuitous. *See Allstate Ins. Co. v. Hiseley,* 465 F.2d 1243 (10th Cir. 1972); *Kermans v. Pendleton,* 62 Mich. App. 576, 233 N.W.2d 658 (1975); *Hawkeye Security Ins. Co. v. Shields,* 31 Mich. App. 649, 187 N.W.2d 894 (1971). In view of the above holding, it is unnecessary to consider other aspects of the policies.

In arguing that his position in the company was such that he amounted to its alter ego, Vittum points to the undisputed evidence

that he managed the road construction crew, hiring personnel, signing checks and doing whatever else was necessary to accomplish the project. In carrying out these duties he supervised approximately 200 employees with a weekly payroll of some $400,000. He however held no corporate office and was in fact a company employee. He concedes that he paid no compensation premiums, and would himself be an employee within the coverage of the workmen's compensation act.

We find no legal support for the proposition that a supervisory employee such as Vittum should be viewed as the employer's alter ego. Professor Larson has observed that modern cases usually hold, with some *contra* authority, that even "a person who is a corporate officer, director, stockholder, or all three can still be treated merely as a co-employee for purposes of being held accountable in a damage suit . . . ." 2A A. Larson, Workmen's Compensation Law § 72.10, at 14–34 (1976); *see Liberty Mut. Ins. Co. v. Home Ins. Indem. Co.*, 116 N.H. 12, 14–15, 351 A.2d 891, 893 (1976). It follows that a supervisory employee should be amenable to suit. 2A A. Larson *supra; see Ransom v. Haner*, 174 F. Supp. 82 (D. Alas. 1959); *Dawley v. Thisius*, 304 Minn. 453, 231 N.W.2d 555 (1975); *Craven v. Oggero*, 213 N.W.2d 678 (Iowa 1973); *Tully v. Estate of Gardner*, 196 Kan. 137, 409 P.2d 782 (1966).

RSA 281:2 III (Supp. 1975) defines an employee with respect to private employment as "any person in the service of an employer . . . under any contract of hire, express or implied, oral or written . . . ." The trial court properly found that Vittum was an employee included within the terms of the statute and rejected the proposed fictional view of his status. No legitimate interest would be served by the adoption of such a fiction, which would obstruct the policy of our law that an employee is accountable for his tortious acts against a fellow employee. *Merchants Mut. Cas. Co. v. Tuttle*, 98 N.H. 349, 101 A.2d 262 (1953). In view of our holding, we need not consider other questions presented by the immunity theory.

Vittum, in the alternative, suggests we overrule our decision in *Merchants Mutual Casualty Co. v. Tuttle supra*. We refuse so to do. The rule rests on an interpretation of legislative intent; it has been adhered to and is now the settled law of the state. *Butler v. King*, 99 N.H. 150, 106 A.2d 385 (1954); *Barrett v. Foster Grant*

*Co.,* 321 F. Supp. 784 (D.N.H. 1970), *rev'd on ground New Hampshire law inapplicable,* 450 F.2d 1146 (1st Cir. 1971); *see Smith v. Am. Employers' Ins. Co.,* 102 N.H. 530, 163 A.2d 564 (1960); Laws 1961, 194:8, 2A A. Larson, *supra* § 72.20.

*Exceptions overruled.*

GRIMES and DOUGLAS, JJ., did not sit; the others concurred.