Hillsborough
No. 82-582

### JAMES F. MACKINNON

v.

### HANOVER INSURANCE COMPANY

February 3, 1984

458

*Backus, Shea & Meyer*, of Manchester (*Jon Meyer* on the brief and orally), for the defendant.

*Hall, Morse, Gallagher & Anderson*, of Concord (*Robert E. K. Morrill* on the brief and orally), for the intervenor, Kimberly A. MacKinnon.

PER CURIAM.   This interlocutory transfer without ruling from the Superior Court (*Souter*, J.) arises out of an action for declaratory judgment to determine coverage under a homeowner's liability insurance policy. In an underlying tort action, the present intervenor, Kimberly A. MacKinnon, on behalf of her daughter, claims liability against the present plaintiff, James F. MacKinnon, on theories of battery and negligent infliction of emotional distress, arising from alleged acts of assault in the form of sexual abuse by the plaintiff against his six-year-old stepdaughter.

The present defendant, Hanover Insurance Company, disclaims coverage for liability on either theory, under a policy exclusion for "bodily injury . . . which is expected or intended by the insured." For the purpose of interpreting and applying this exclusion, the superior court has transferred two questions, which in effect ask (1) whether the intention or expectation on which the exclusion turns is the actual intention or expectation of the insured with respect to bodily injury and (2) whether evidence of the insured's intoxication is admissible in determining such intention or expectation. We answer yes to each question.

The first question is about interpretation. On its face, the quoted language does not present any need for interpretation. The meaning of the language is plain, and the common meaning of the language governs. *Baker v. McCarthy*, 122 N.H. 171, 175, 443 A.2d 138, 140 (1982). There is no indication that "bodily injury . . . expected or intended by the insured" refers to anything other than actual expectation or intention, as to the bodily injury, in the mind of the insured at the time he took the action allegedly resulting in injury. We hold that the exclusion refers to such actual expectation or intention.

Essentially three objections to this conclusion have been raised. The first rests upon the authority of cases construing "injury" to mean any injury resulting from an act intended or expected to injure. This interpretation would broaden the exclusion,

since it would not limit coverage by reference to the particular injury intended. The present policy is not open to such an interpretation for the simple reason that the exclusion speaks of "bodily injury . . . expected or intended by the insured," not of bodily injury resulting from an act expected or intended by the insured to injure.

■ Moreover, the cases cited in support of the broader exclusion characteristically are cases construing an exclusion relating to "bodily injury intended or expected from the standpoint of the insured." *E.g., Smith v. Senst,* 313 N.W.2d 202 (Minn. 1981); *Steinmetz v. National American Ins. Co.,* 121 Ariz. 268, 589 P.2d 911 (1979). The criterion of the insured's standpoint was apparently adopted to reverse the judicial practice of determining coverage for accidental injury by reference to the expectations of the victim, rather than those of the insured. *See Patrons-Oxford Mut. Ins. Co. v. Dodge,* 426 A.2d 888, 890–91 (Me. 1981). But a reference to intention or expectation from the insured's "standpoint" does, or may do, more. Such an exclusion may be construed to introduce what has been called an "objective normative" standard of intent or expectation. Such at least would allow for the possibility of the broader reading of the exclusion for which the defendant argues. A reference to intention or expectation "by" the insured does not allow for such a construction. The cases turning on "standpoint" are thus inapposite. We note also that even the "standpoint" cases do not necessarily support the defendant's view. *Id.* at 891.

■ The second objection to our conclusion is that some acts are so nearly certain to produce injury that intent or expectation to injure should be inferred as a matter of law, so as to exclude coverage. The principal weakness of this position is that the policy language could have provided for this expressly, but did not. The principal strength of this position rests on a dictum in *Vittum v. N.H. Ins. Co.,* 117 N.H. 1, 4, 369 A.2d 184, 186–87 (1977). That opinion construed an exclusion tied to "injuries intentionally caused." *Id.* at 4, 369 A.2d at 186. While we noted that the trial court had found the insured had in fact intended the injury in question, we also responded to an argument of the insured by observing that the Restatement (Second) of Torts, § 8A, regarded intended consequences as including those which the actor knows are "substantially certain" to result from an act, even if not actually desired. *Id.*

On reflection, we decline to modify the usual rules of construction in cases of insurance contracts by injecting concepts of substantive tort law into the process. We are not here concerned with the policy of the law of torts, any more than we were concerned in *Vittum* with "some remedial legislative goal." *Id.* We note, too, that in the present

case *Vittum* is of limited precedential value because the court was not concerned with "injury . . . expected or intended," but with "injuries intentionally caused." The language at issue in *Vittum* is at least open to the construction that intentionality refers to the act of causation, but not necessarily to the particular injury resulting. Sound or not, such a reading does not naturally fit the language before us.

We next reach the third objection, that the application of rules of public policy should preclude coverage in this case. Since the acts pleaded in the declaration are acts of assault, of a sexual nature, the defendant argues that an insured should not be indemnified against liability for their consequences. In essence, the defendant's position is that public policy precludes coverage for all consequences of intentional acts of harm. We find, on the contrary, that existing case law in this State is no barrier to finding the coverage claimed by the plaintiff.

In *American Home Assurance Co. v. Fish*, 122 N.H. 711, 451 A.2d 358 (1982), we overruled *Commercial Union Assurance Cos. v. Town of Derry*, 118 N.H. 469, 387 A.2d 1171 (1978), to the extent the latter case held public policy precluded coverage in cases of intentional torts. We observed that public policy favored rather than precluded coverage for liability arising directly against the insured from intentional torts such as false arrest, slander and subjects of actions under 42 U.S.C. § 1983. *Id.* at 715, 451 A.2d at 360. Defendants have not provided us with any reason in principle to apply a different rule of public policy when liability is claimed to arise from acts of sexual assault, and we know of none.

The second question transferred asks whether evidence of intoxication is admissible on the issues of intent and expectation under the exclusion clause. The defendant argues that it is not, citing two cases for the proposition that evidence that the insured "was under the influence of intoxicants and marijuana is of no consequence, for the law must not permit the use of such stimuli to become a defense for one's actions." *Hanover Ins. Co. v. Newcomer*, 585 S.W.2d 285, 289 (Mo. App. 1979); *Travelers Ins. Co. v. Cole*, 631 S.W.2d 661, 664 (Mo. App. 1982).

We find these cases unpersuasive for two reasons. They speak of policies that should govern liability in tort, whereas in those cases, and in this one, the issue is one of coverage under a contract of insurance. Moreover, in each of those cases cited, the courts were interpreting an exclusionary clause that turned on intent or expectation "from the standpoint of the insured," and in each case the court had adopted a rule that from certain acts intent should be

inferred as a matter of law. Against this legally required inference, the courts held intoxication unavailing. In the present case, we deal with different operative language and have adopted the different standard of intent or expectation in fact. The cases cited are, therefore, not on point.

■■ While public policy applicable to the criminal law does not automatically apply in a civil context, *Burd v. Sussex Mutual Ins. Co.*, 56 N.J. 383, 399, 267 A.2d 7, 15 (1970), we note that for the purpose of determining the existence of the mental element on which criminal liability may depend, evidence of intoxication is admissible. RSA 626:4. While the exclusion in question reflects the assumption that coverage would weaken the deterrent fear of liability, it is not obvious that a refusal to consider relevant evidence of intoxication on the issue of actual intent would have any appreciable effect on the behavior of insured persons. Hence, we find no reason in public policy to narrow coverage by holding evidence of intoxication inadmissible in the absence of a policy provision to that effect. *See, e.g., Burd v. Sussex Mutual Ins. Co. supra; Nettles v. Evans*, 303 So. 2d 306 (La. App. 1974).

We emphasize that our answer to each question seeks to give effect to the plain meaning of an insurance contract. These answers do not imply that the contract could not have been different, and they do not imply anything about the court's views on the substantive law of torts.

*Remanded.*

SOUTER, J., did not sit.