### STATE FARM FIRE & CASUALTY COMPANY, Petitioner,

v.

### S.S. & G.W., Respondents.

### No. D–1339.

Supreme Court of Texas.

June 30, 1993.

Rehearing Overruled Sept. 10, 1993.

---

Scott R. Kidd, Austin, David V. Jones, Carol A. Jenson, San Antonio, for petitioner.

David J. Nagle, Mark P. Clark, Austin, for respondents.

**OPINION**

HIGHTOWER, Justice.

This cause involves the applicability of the intentional injury exclusion of a homeowner's policy to a claim resulting from the transmission of genital herpes. State Farm Fire and Casualty Company (State Farm) brought suit against G.W. and S.S. seeking a declaratory judgment that G.W.'s homeowner's policy did not provide coverage for the claims asserted against him by S.S. The trial court rendered summary judgment in favor of State Farm. The court of appeals reversed and remanded holding that State Farm failed to meet its summary judgment burden because it did not produce conclusive evidence that G.W. intended to transmit herpes to S.S. 808 S.W.2d 668. For the reasons explained herein, we affirm the judgment of the court of appeals.

S.S. contracted genital herpes after engaging in consensual sexual intercourse with G.W. at his home in November 1986. After S.S. requested that G.W. compensate her for her injuries, G.W. notified State Farm, the issuer of his homeowner's insurance policy. State Farm agreed to investigate the claim and provide G.W. with defense counsel, but required that G.W. sign a "request of services and non-waiver of

rights agreement." G.W.'s homeowner's policy included an intentional injury exclusion provision. Based on that provision, State Farm questioned whether the policy actually covered S.S.' claim and rejected S.S.' settlement offers for amounts within the policy limits. G.W. later rejected State Farm's offer of counsel and employed his own attorney. S.S. filed suit against G.W. alleging that he negligently transmitted genital herpes to her. S.S. and G.W. settled and entered into an agreement providing for the entry of a $1 million judgment in favor of S.S. and that S.S. would not execute the judgment against G.W. in exchange for the assignment of one-third of any claims which he might have against State Farm for bad faith claims adjustment, deceptive trade practices, or Insurance Code violations. After S.S. and G.W. informed State Farm of the agreed judgment, State Farm instituted this declaratory judgment action seeking a declaration that it is not obligated to pay the $1 million judgment because, among other things, (1) S.S.' claims in the underlying suit fell within the intentional injury exclusion provision in the policy and thus no coverage exists under the policy, and (2) G.W.'s actions in failing to notify State Farm of S.S.' lawsuit and entering into an agreed judgment without State Farm's knowledge breached his duty to cooperate under the policy and precluded any recovery by G.W. under the policy. Subsequently, State Farm filed a motion for summary judgment on these grounds. G.W. and S.S. counterclaimed alleging that State Farm engaged in bad faith settlement practices in failing to pay the claim under the policy. S.S. also filed a motion for summary judgment. The trial court rendered summary judgment in favor of State Farm on the specific ground that the homeowner's policy did not, as a matter of law, provide coverage for any of the claims asserted by S.S. in the underlying suit. The trial court's summary judgment order did not address State Farm's claim that G.W. breached his duty to cooperate. The trial court overruled S.S.' motion for summary judgment and denied G.W. and S.S. any relief on their counterclaim. The court of appeals affirmed the trial court's denial of S.S.' summary judgment holding that S.S. failed to conclusively show that coverage existed as a matter of law. The court of appeals reversed the judgment of the trial court granting summary judgment to State Farm holding that the summary judgment evidence did not conclusively show that G.W. intended to transmit the disease to S.S. nor did it indicate that G.W.'s conduct was so extreme that intent to injure can be inferred as a matter of law. The court of appeals also reversed the summary judgment on G.W. and S.S.' counterclaims and remanded the cause to the trial court for further proceedings.

## I.

■ State Farm argues that as a matter of law, the transmission of genital herpes is an intentional injury which comes within the "intentional injury exclusion" of G.W.'s homeowner's policy. Consequently, S.S.' claim is not covered by G.W.'s homeowner's policy. We disagree.

Genital herpes is a contagious disease which is spread through sexual intercourse and for which there is no known cure. *See generally* Louis A. Alexander, Note, *Liability in Tort for the Sexual Transmission of Disease: Genital Herpes and the Law,* 70 CORNELL L.REV. 101 (1984). Generally, the medical community advises herpes infected patients to avoid sexual intercourse when experiencing actual symptoms of the disease in order to prevent transmission of the disease to their sexual partner. *See* Ervin Adam, *Herpes Simplex Virus Infections, in* HUMAN HERPESVIRUS INFECTIONS, CLINICAL ASPECTS 1, 23–25 (Ronald Glaser & Tamar Gotlieb–Stematsky eds., 1982); J. David Oriel, *Genital Lesions, in* DIAGNOSIS AND TREATMENT OF SEXUALLY TRANSMITTED DISEASES 95, 98–99 (William M. McCormack ed., 1983). However, in recent years, some researchers have identified the theory of asymptomatic shedding, i.e., that a herpes carrier may be contagious and spread the disease even when the individual is not experiencing any symptoms. *See* Kenneth H. Fife & Lawrence Corey, *Herpes Simplex Virus in*

SEXUALLY TRANSMITTED DISEASES 941 (King K. Holmes et al. eds., 1990); Gregory J. Merts, M.D. et al., *Frequency of Acquisition of First-episode Genital Infection with Herpes Simplex Virus from Symptomatic and Asymptomatic Source Contacts,* 12 SEXUALLY TRANSMITTED DISEASES 33, 37–39 (1985); James F. Rooney, M.D. et al., *Acquisition of Genital Herpes from an Asymptomatic Sexual Partner,* 314 NEW ENG.J.MED. 1561, 1563–64 (1986).

The homeowner's policy covering G.W. in November 1986[1] included the following "intentional injury exclusion" provision:

> EXCLUSIONS—Coverage D shall not apply:
> to bodily injury or property damage caused intentionally by or at the direction of the Insured[.]

When considering the applicability of similar intentional injury exclusions to claims resulting from the transmission of herpes, other jurisdictions recognize that the resulting damage may be unintended although the acts leading to the damage are intentional. *See State Farm Fire & Casualty Co. v. Irene S.,* 138 A.D.2d 589, 526 N.Y.S.2d 171, 173 (N.Y.App.Div.1988); *see also State Farm Fire & Casualty Co. v. Eddy,* 218 Cal.App.3d 958, 267 Cal.Rptr. 379, 386 (Cal.Ct.App.1990) (coverage not necessarily precluded when transmission was unexpected, unforeseen, and independent of the intentional sexual conduct). In *Milbank Ins. Co. v. B.L.G. & M.M.D.,* 484 N.W.2d 52, 53 (Minn.Ct.App.1992), a Minnesota court of appeals considered whether B.L.G. "intended" to infect M.M.D. with

the herpes virus. Interpreting a similar policy provision, the court held that "[c]overage is not avoided by an intentional act exclusion unless the insured has acted with intent to cause a bodily injury. When the act itself is intended but the resulting injury is not, the insurance exclusion has no application." *Id.* at 58. The court concluded that "a reasonable possibility that an actor is contagious does not compel the conclusion that it is highly certain a particular act of his will result in the infection of another." *Id.*

This Court recognizes that when "the effect is not the natural and probable consequence of the means which produce it— an effect which does not ordinarily follow and cannot be reasonably anticipated from the use of the means, or an effect which the actor did not intend to produce, and which he cannot be charged with a design of producing—it is produced by accidental means." *Republic Nat'l Life Ins. Co. v. Heyward,* 536 S.W.2d 549, 555–56 (Tex. 1976). The Court also recognizes "that a person insured against injury effected through accidental means would consider himself insured against such a casualty, since the very purpose of such insurance is to provide indemnity against any fortuitous, unexpected, or undesigned injury." *Id.* at 557. Although our language in *Republic National* referred to "accidents," the same reasoning applies in cases when the policy contains an intentional injury exclusion. An insured under a policy with an intentional injury exclusion still relies on the policy to provide indemnity against fortuitous, unexpected or undesigned injury.[2]

---

1. The standard homeowner's policy currently approved for use in Texas expressly excludes sexually transmitted sickness or disease from coverage under the policy. *See* 12 Tex.Reg. 1031–32 (1987); State Board of Insurance, Board Order 50372 (Mar. 31, 1987) (approving an amendment to exclude coverage for sexually transmitted disease). However, the policy covering G.W. in November 1986 did not specifically exclude sexually transmitted diseases from coverage.

2. *Argonaut Southwest Ins. Co. v. Maupin,* 500 S.W.2d 633 (Tex.1973) is distinguishable. In *Argonaut Southwest Ins. Co.,* this Court considered whether an injury to property was caused

by "accident" and thus whether an insurer was obligated to pay under an insurance policy. The policy obligated the insurer to pay for damages "because of injury to or destruction of property, including the loss of use thereof, caused by accident." *Id.* at 634 n. 1. We held that when the insured's acts were voluntary and intentional and the injury is the natural result of the act, the damage was not an accident within the meaning of the policy even though the injury may have been unexpected, unforeseen and unintended. *Id.* at 635. In this case, when the infected party is not experiencing any symptoms of the disease, transmitting herpes is not a *natural result* of engaging in sexual intercourse. Additionally, we are not determining

■ When considering whether G.W. intended to injure S.S. it is instructive to examine the meaning of intent. Ordinarily, whether an insured intended harm or injury to result from an intentional act is a question of fact. *See Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex.1986) (issue of intent is uniquely within the realm of the factfinder); *Logan v. Mullis*, 686 S.W.2d 605, 608 (Tex.1985) (intent is generally a question of fact to be decided by the jury); *see also Raby v. Moe*, 153 Wis.2d 101, 450 N.W.2d 452, 456 (1990) (insured's intent to injure is question of fact). This Court relies on the definition of intent provided in the Restatement (Second) of Torts. *Rodriguez v. Naylor Indus., Inc.*, 763 S.W.2d 411, 412 (Tex.1989); *Reed Tool Co. v. Copelin*, 689 S.W.2d 404, 406 (Tex.1985). Under the Restatement (Second) of Torts, an insured intends to injure or harm another if he intends the consequences of his act, or believes that they are substantially certain to follow. RESTATEMENT (SECOND) OF TORTS § 8A (1965). Prosser also provides insight on the nature of intent.

> [I]ntent is broader than a desire or purpose to bring about physical results. It extends not only to those consequences which are desired, but also to those which the actor believes are substantially certain to follow from what the actor does.... On the other hand, the mere knowledge and appreciation of a risk—something short of substantial certainly—is not intent. The defendant who acts in the belief or consciousness that the act is causing an appreciable risk of harm to another may be negligent, and if the risk is great the conduct may be characterized as reckless or wanton, but it is not an intentional wrong. In such cases the distinction between intent and negligence obviously is a matter of degree. The line has been drawn by the courts at the point where the known danger ceases to be only a foreseeable risk which a reasonable person would avoid, and becomes in the mind of the actor a substantial certainty.

W. PAGE KEETON. ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 8, at 35–36 (5th ed. 1984).

Although it is undisputed that G.W. intentionally engaged in sexual intercourse without informing S.S. of his condition, the summary judgment evidence in this case does not indicate that G.W. acted with intent to cause S.S. bodily injury.[3] The summary judgment evidence indicates that G.W. did not believe it was possible to transmit the disease without an active lesion and fails to demonstrate that G.W. knew that engaging in sexual intercourse with S.S. was substantially certain to result in transmission of the disease to S.S.[4]

■ State Farm argues that G.W. committed the intentional tort of battery because S.S.' consent to the sexual act was vitiated by the fact the G.W. did not inform her that he had herpes. The Restatement discusses when a person's consent is ineffective so that the person is entitled to maintain any tort action that would be available to him if the consent had not been given. RESTATEMENT (SECOND) OF TORTS § 892B (1979). As an illustration of ineffective consent, the Restatement explains that when A consents to sexual intercourse with B, and B knows that A is ignorant of the fact that B has a venereal

---

whether the transmission of genital herpes was an "accident" or whether G.W.'s *acts* were intentional, but specifically whether G.W. intentionally caused bodily injury to S.S. by transmitting herpes to her. This distinction is significant because the intentional injury exclusion provision states only that coverage does not exist for intentionally caused *bodily injury*, and does not state that coverage does not exist for intentional acts.

3. Justice Hecht's dissent mischaracterizes the facts of the case by relying on S.S.' statements in the summary judgment evidence which are expressly controverted by G.W.'s statements. In addition, the dissent infers G.W. is a doctor with special medical knowledge of herpes. However, G.W. is not a medical doctor, but is an optometrist trained to provide corrective eyewear.

4. Although Justice Hecht's dissent recognizes that a person is considered to have intended those consequences which are substantially certain to follow, he muddles the application of that test by seemingly arguing that because G.W.'s acts were intentional, the resulting injury was also intentional.

disease, B is subject to liability to A for battery, an intentional tort. *Id.* at cmt. e, illus. 5. However, the Restatement also explains that B's "own mistake may indeed prevent his conduct from amounting to an intentional tort, as when there is no knowledge that a touching will be harmful." *Id.* at cmt. c. Here, it appears to be undisputed, or at least there is a fact issue concerning whether G.W. was operating under the mistaken impression that he could not transmit herpes when he had no symptoms of the disease. Consequently, we conclude that an issue of material fact exists concerning whether G.W. knew at that time with substantial certainty that he would transmit herpes to S.S. Because an issue of material fact exists, we hold that the trial court improperly rendered summary judgment.

## II.

■ State Farm also argues that even if G.W. did not intend to injure S.S. by his conduct, his intent to injure is inferred as a matter of law. We disagree.

Jurisdictions which infer intent in sexual misconduct cases usually do so only in instances of sexual misconduct with minors or forcible sex acts between adults.[5] Those jurisdictions reason that intent to injure may be inferred only when the character of an act is such that the "degree of certainty that the conduct will cause injury is sufficiently great to justify inferring in-

tent to injure as a matter of law." *Loveridge v. Chartier*, 161 Wis.2d 150, 468 N.W.2d 146, 151 (1991); *see also Woida v. North Star Mut. Ins. Co.*, 306 N.W.2d 570, 573 (Minn.1981) (inferring intent when the actions were of a calculated nature); *Milbank Ins. Co. v. B.L.G. & M.M.D.*, 484 N.W.2d 52, 58 (Minn.Ct.App.1992) (refusing to address inferred intent without a finding that the defendant engaged in sexual conduct knowing it was highly certain that he would infect the plaintiff). However, "[t]here is no bright-line rule to determine when intent to injure should be inferred as a matter of law. Rather, each set of facts: 'must be considered on a case-by-case basis; the more likely harm is to result from certain intentional conduct, the more likely intent to harm may be inferred as a matter of law.'" *Loveridge v. Chartier*, 468 N.W.2d at 151 (quoting *K.A.G. v. Stanford*, 148 Wis.2d 158, 434 N.W.2d 790, 793 (Ct.App.1988)).

This case differs from the sexual misconduct cases inferring intent because G.W. and S.S. were consenting adults. California and Minnesota specifically refuse to infer intent to injure as a matter of law when the voluntary sexual acts of consenting adults result in the transmission of herpes. *See State Farm Fire & Casualty Co. v. Eddy*, 218 Cal.App.3d 958, 267 Cal. Rptr. 379, 385 (1990) (refusing to infer intent because the sexual conduct between

**5.** *CNA Ins. Co. v. McGinnis*, 282 Ark. 90, 666 S.W.2d 689 (1984) (infer intent when stepfather sexually abuses stepdaughter); *Allstate Ins. Co. v. Kim W.*, 160 Cal.App.3d 326, 206 Cal.Rptr. 609 (Cal.Ct.App.1984) (infer intent in case involving sexual assault of a child when act violates criminal statute); *Altena v. United Fire & Casualty Co.*, 422 N.W.2d 485 (Iowa 1988) (involved nonconsensual sexual assault of an adult); *Linebaugh v. Berdish*, 144 Mich.App. 750, 376 N.W.2d 400 (Mich.Ct.App.1985) (infer intent to injure when 21 year old engages in consensual sex with 14 year old); *Fireman's Fund Ins. Co. v. Hill*, 314 N.W.2d 834 (Minn.1982) (infer intent when adult sexually abuses foster child in his care); *Horace Mann Ins. Co. v. Independent School Dist.*, 355 N.W.2d 413 (Minn.1984) (infer intent when teacher engages in sexual relations with tenth grade student); *State Farm Fire & Casualty Co. v. Williams*, 355 N.W.2d 421 (Minn. 1984) (infer intent when professor has nonconsensual sexual contact with disabled adult); *Es-*

*tate of Lehmann v. Metzger*, 355 N.W.2d 425 (Minn.1984) (infer intent when uncle repeatedly sexually assaults niece); *Allstate v. Mugavero*, 79 N.Y.2d 153, 581 N.Y.S.2d 142, 589 N.E.2d 365 (1992) (infer intent in case of child molestation); *Rodriguez v. Williams*, 107 Wash.2d 381, 729 P.2d 627 (1986) (infer intent to injure as a matter of law when insured commits incest); *Horace Mann. Ins. v. Leeber*, 180 W.Va. 375, 376 S.E.2d 581 (1988) (intent to injure inferred as a matter of law in sexual misconduct case involving a teacher's sexual conduct with student); *N.N. v. Moraine Mut. Ins. Co.*, 153 Wis.2d 84, 450 N.W.2d 445 (1990) (intent to injure inferred when insured voluntarily pled guilty to sexual assault of a minor). *But see MacKinnon v. Hanover Ins. Co.*, 124 N.H. 456, 471 A.2d 1166 (1984) (court refused to infer intent merely because the act is nearly certain to produce injury and instead held that the actual expectation or intention of the insured was determinative).

adults did not constitute rape); *North Star Mut. Ins. Co. v. R.W.*, 431 N.W.2d 138, 143 (Minn.Ct.App.1988) (refusing to infer intent as a matter of law in a negligence case involving consenting adults). In this case involving intercourse between consenting adults, there is no evidence that G.W. knew with a high degree of certainty that he would transmit genital herpes to S.S. Consequently, we will not infer intent as a matter of law.

### III.

State Farm also argues that the court of appeals erred in failing to affirm the summary judgment on the ground that G.W. breached his duty to cooperate. However, we will not consider an independent summary judgment ground not specified in the trial court's summary judgment order. Although we decline to affirm the summary judgment on an independent ground, we do so without prejudicing State Farm's right on remand to reargue those grounds asserted in its summary judgment motion and not addressed by the trial court's specific summary judgment order.

The trial court's summary judgment order was specific in that the order specified the ground on which the summary judgment was granted. The order granted State Farm's summary judgment motion, denied S.S.' summary judgment motion, and expressly provided: "a Declaratory Judgment is hereby entered that, as a matter of law, the [homeowner's policy] provides no coverage for any of the claims asserted by [S.S.]." When reviewing a summary judgment granted on *general* grounds, this Court considers whether any theories asserted by the summary judgment movant will support the summary judgment.

When a trial court's order granting summary judgment does not specify the ground or grounds relied on for the ruling, summary judgment will be affirmed on appeal if any of the theories advanced are meritorious.

*Rogers v. Ricane Enter. Inc.*, 772 S.W.2d 76, 79 (Tex.1989); *see also Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex.1989). Conversely, in this case, the trial court's order explicitly *specifies* the ground relied on for the summary judgment ruling; thus, the summary judgment can only be affirmed if the theory relied on by the trial court is meritorious, otherwise the case must be remanded. This Court recognizes that "when a trial court has specified the ground on which it was granting summary judgment, we must remand the cause to allow the trial court to rule on the remaining grounds." *State v. Flag–Redfern Oil Co.*, 852 S.W.2d 480, 484 n. 6 (Tex.1993). In addition, when a trial court grants a summary judgment on a specific ground, this Court's practice is to "limit our consideration to the grounds upon which summary judgment was granted and affirmed." *Delaney v. University of Houston*, 835 S.W.2d 56, 58 (Tex.1992); *Delaney*, 835 S.W.2d at 62 (Doggett, J., concurring) ("When the order granting summary judgment explicitly states the grounds therefor, and the underlying motion contains other independent grounds for the same relief, the summary judgment can be affirmed only on the grounds specified in the trial court's order."); *see also Veytia v. Seiter*, 740 S.W.2d 64 (Tex.App.—San Antonio 1987), *aff'd*, 756 S.W.2d 303 (Tex. 1988).[6]

Courts of appeals also hold that the ground specified in a trial court's judgment is the only one on which the summary judgment can be affirmed. *Maley v. 7111 Southwest Freeway, Inc.*, 843 S.W.2d 229, 234 (Tex.App.—Houston [14th Dist.] 1992, writ denied); *In re Estate of Canales*, 837 S.W.2d 662, 668 (Tex.App.—San Antonio

---

**6.** In *Veytia*, the trial court granted summary judgment on a specific ground. The court of appeals rejected that ground but considered the alternate ground urged by the movant and not addressed by the trial court. After rejecting that ground as well, the court of appeals reversed and remanded to the trial court. This Court affirmed, but only considered the specific ground that the trial court based its summary judgment motion on and did not discuss the merits of the alternate grounds. *See Veytia*, 756 S.W.2d at 305 ("The court of appeals correctly held that the federal statute did not preempt usurious late charges, and we affirm that holding.").

1992, no writ); *Carlisle v. Philip Morris, Inc.*, 805 S.W.2d 498, 518 (Tex.App.—Austin 1991, writ denied).[7] *Carlisle* reasoned that issues to be reviewed by an appellate court must have been actually presented to and considered by the trial court. Accordingly, when

> a party has sought summary judgment on grounds A and B, a judgment expressly granting summary judgment on ground A, without mentioning ground B, can only be construed to mean that the trial court did not consider ground B. To construe it otherwise would be to permit and encourage an inference that is neither warranted by the record nor in keeping with the spirit of Rule 166a(c).

*Carlisle*, 805 S.W.2d at 518.

Commentators recognize that when the summary judgment expressly states the ground on which the trial court granted the motion, the appellate court is precluded from determining the viability of the other stated grounds when reviewing the summary judgment. TIMOTHY PATTON, SUMMARY JUDGMENT IN TEXAS, PRACTICE, PROCEDURE AND REVIEW, § 8.04 (1992); John Hill Cayce, Jr., *Preserving Error on Appeal: A Practical Guide for Civil Appeals in Texas*, 23 ST. MARY'S L.J. 15, 73 n. 395, 77–78 n. 420 (1991). Commentators also note that when there are multiple grounds for summary judgment and the order does not specify the ground on which the summary judgment was granted, the appealing party must negate all grounds on appeal. For this reason, commentators suggest that the movant obtain a broad judgment which can be sustained on any theory presented to the trial court and non-movants seek to have the court specify the ground upon

which judgment was granted. *See generally* 6 ROY W. MCDONALD, TEXAS CIVIL APPELLATE PRACTICE § 28.5 (Richard Orsinger 1992); TIMOTHY PATTON, SUMMARY JUDGMENT IN TEXAS, PRACTICE, PROCEDURE AND REVIEW, § 8.04 (1992); David Hittner & Lynne Liberato, *Summary Judgments in Texas*, 20 ST. MARY'S L.J. 243, 282 (1989). Were this Court to adopt a practice of affirming on alternate grounds even when the trial court specifically ruled only on one ground, non-movants would be required to negate all grounds on appeal, even those not considered by the trial court. The appealing party would thus be required to argue issues on appeal that the trial court never considered or ruled on.

We believe this Court's practice of declining to consider alternate grounds for summary judgment when the trial court specifically rules on a different ground continues to be the most judicious procedure. Affirming a summary judgment on an independent ground not specifically considered by the trial court usurps the trial court's authority to consider and rule on issues before it and denies the appellate court of the benefit of the trial court's decision on the issue. Such a practice results in appellate courts rendering decisions on issues not considered by the trial court and voiding the trial court's decision without allowing it to first consider the alternate grounds.[8] Usurping the trial court's authority does not promote judicial economy, but instead serves as an encouragement for summary judgment movants to obtain a specific ruling from a trial judge on a single issue and then try again with other alternate theories at the court of appeals, then assert the same or additional alternate

---

7. *Curry v. Clayton,* 715 S.W.2d 77 (Tex.App.—Dallas 1986, no writ) does not conflict with these appellate decisions. *Curry* does not affirm the trial court's summary judgment on a ground asserted in the summary judgment motion but not specifically addressed by the trial court's summary judgment motion. *Curry* actually contemplates whether the trial court properly ruled on summary judgment *evidence* rather than the grounds for summary judgment. Reviewing the trial court's discretion to strike admissions deemed admitted and whether Curry demonstrated good cause for a motion to extend time to file responses does not constitute considering or affirming a summary judgment on a ground not specifically ruled on by the trial court.

8. Such is the case here. When the trial court judge determined there was no coverage under the homeowner's policy, his decision resolved the case and it was not necessary for him to specifically consider the issue of breach of the duty to cooperate.

theories before this Court. Our system of appellate review, as well as judicial economy, is better served when appellate courts only consider those summary judgment issues contemplated and ruled on by the trial court.

For the reasons explained herein, we hold that an issue of material fact exists concerning whether G.W. knew at the time with substantial certainty that he would transmit herpes to S.S., that intent to injure is not inferred as a matter of law, and that the trial court improperly rendered summary judgment. Accordingly, we affirm the judgment of the court of appeals.

Concurring Opinions by Chief Justice PHILLIPS and Justice CORNYN.

Dissenting Opinion by Justice GONZALEZ joined by Justice ENOCH.

Dissenting Opinion by Justice HECHT.

PHILLIPS, Chief Justice, concurring.

I believe that an appellate court may affirm a summary judgment on any properly raised and preserved grounds, even those not recited in the trial court's order. Because I believe we should not exercise such authority in this case, however, I join only in the Court's judgment, not its opinion.

As the writings in this case demonstrate, there is considerable tension between the mandate in our rules for appellate courts to render the appropriate judgment, TEX. R.APP.P. 81(b), 180, and the various pronouncements by this and other courts that summary judgments should not be affirmed on unspecified grounds. The plurality would resolve this tension by adopting an inflexible rule against considering unspecified grounds under any circumstances. Justice Gonzalez, on the other hand, would prefer that appellate courts always consider all possible grounds for affirming a summary judgment. Both opinions, ironically, cite judicial economy as a principal justification for their position. I am not persuaded that judicial economy is in fact best served by either inflexible rule. At times, the record will be sufficiently clear, and the need for an immediate final disposition suf-

ficiently strong, that an appellate court will best discharge its duty by reviewing all summary judgment grounds raised and preserved by movant, regardless of the trial court's action. More often, however, the administration of justice would probably best be served by further trial court review. As we recently observed: *"Ordinarily,* when a trial court has specified the ground on which it was granting summary judgment, we must remand the cause to allow the trial court to rule on the remaining grounds." *State v. Flag–Redfern Oil Co.,* 852 S.W.2d 480, 484 n. 6 (Tex.1993) (emphasis supplied). Certainly that rule seems preferable here.

The determination of whether an insurance company has been relieved of its contractual obligations by the conduct of its insured is inherently a fact-intensive and case-specific inquiry. This Court should be very reluctant to undertake the initial determination of whether such conduct is established as a matter of law. Moreover, the respondents have declined to brief the issue to either the court of appeals or this Court. Under these circumstances, I agree with Justice Hecht that the ends of justice are best served by affording the trial court the first opportunity for review and decision. Therefore, I would remand this cause to the trial court for specific consideration of the remaining grounds of State Farm's motion, and for such other and further proceedings as may be necessary in accordance with the Court's judgment.

CORNYN, Justice, concurring.

I agree with the court that a fact issue exists regarding whether G.W. knew with substantial certainty that his actions would result in the transmission of herpes to S.S., and that there is no evidence from which we can infer intent in this case. *See Twyman v. Twyman,* 855 S.W.2d 619 (1993) (discussing the substantial certainty standard in cases alleging intentional infliction of emotional distress). Thus, I join in parts I and II of the court's opinion.

I disagree, however, with the court's refusal to consider alternative grounds upon which the trial court's summary judgment

can be affirmed. Therefore, I join in part II of JUSTICE HECHT'S opinion.

GONZALEZ, Justice, dissenting.

A one-night sexual encounter ended tragically when the female contracted genital herpes after consensual intercourse with her male partner. She sued him and obtained an agreed judgment for $1 million, which she now seeks to enforce against her partner's homeowners' insurer. The insurance company filed a declaratory judgment suit against the two protagonists seeking a declaration that it was not obligated to pay the judgment. The parties filed a counterclaim against the insurance company for breach of contract, negligence in handling the claim, violations of the Texas Deceptive Trade Practices Act and the Insurance Code, and for negligent infliction of emotional distress. All parties filed motions for summary judgment, and the trial court granted the insurance company's motion and denied that of the parties'. The court of appeals reversed and remanded the judgment of the trial court. 808 S.W.2d 668. We can end this case today by reversing the judgment of the court of appeals and affirming that of the trial court but the Court refuses to apply and severely compromises a rule designed to reduce the delay and expense of litigating clear-cut cases.[1] The Court's decision changes summary judgment practice from one of the quickest methods of resolving disputes to one of the most protracted. It holds in effect that while there may be no questions of fact left for a jury to decide, we must remand to get the trial court's opinion on a question of law. This holding insures a second round of appeals on a matter which we could and should resolve today. In my opinion, as a matter of law, the insured breached his duty to cooperate with the insurance company by failing to give notice of the suit and the trial court's judgment can be affirmed on this basis. However, the Court refuses to consider this issue. I dissent.

G.W. met S.S. in a nightclub. That same evening she accompanied him to his house where they engaged in consensual sexual intercourse. S.S. claimed that she contracted herpes from this contact and demanded that G.W. pay her damages. **Without notice to State Farm,** G.W. entered into a $1 million collusive agreement with S.S. He then assigned any cause of action of a **contractual** nature under the policy to S.S. in exchange for a covenant that she would not try to collect the judgment from him. In fact, G.W. retained a 2/3 interest in any bad faith **tort** claim against State Farm, so not only is he absolved from paying a dime to S.S., but he has the potential of profiting from this encounter.

Since State Farm is being asked to pay the agreed judgment when it never had an opportunity to defend itself, it filed this declaratory judgment suit against S.S. and G.W. to establish that it owed nothing under the homeowner's policy. State Farm moved for summary judgment on grounds of breach of contract, intentional injury exclusion, and public policy. In its final judgment, the trial court recited:

> ... having considered said documents, the responses thereto, the affidavits and Summary Judgment proof before the Court, and the arguments and authorities of counsel, being of the opinion that State Farm Fire and Casualty Company's Motion for Summary Judgment should be granted, and S.S.'s Second Motion for Summary Judgment should be in all things denied, it is, therefore Ordered ... as a matter of law, the ... policy issued to G.W., provides no coverage for any of the claims asserted by S.S. against G.W. in Cause No. 434,566, in the District Court of Travis County, Texas.

Thus, the trial court's judgment is based on the ground of policy coverage, and is silent with respect to the other grounds advanced by State Farm. The court of appeals reversed, holding that there was a question of fact on the issue of policy coverage. 808 S.W.2d 668, 670. The court of appeals refused to consider the other grounds State Farm presented in its motion for summary judgment. *Id.* at 671–72.

**1.** Roy McDonald, *Summary Judgment,* 30 Tex. L.Rev. 285, 286 (1952).

The Court today compounds the error by doing the same.

The courts of appeals are not in full accord on whether the grounds presented by the summary judgment movant, but which were not made a basis of the judgment, may be considered by the reviewing court as a basis for affirming the judgment. *Compare In re Estate of Canales*, 837 S.W.2d 662, 668 (Tex.App.—San Antonio 1992, no writ), and *Carlisle v. Philip Morris, Inc.*, 805 S.W.2d 498 (Tex.App.—Austin 1991, writ denied) *with Veytia v. Seiter*, 740 S.W.2d 64, 66 (Tex.App.—San Antonio 1987), *aff'd on other grounds*, 756 S.W.2d 303 (Tex.1988); *Curry v. Clayton*, 715 S.W.2d 77, 80 (Tex.App.—Dallas 1986, no writ). When the issues are properly preserved, a reviewing court should be able to consider alternative grounds for affirming a summary judgment when all issues have been resolved as a matter of law in a final judgment.[2]

Summary judgment is proper only when there are no genuine issues of fact, only questions of law. Tex.R.Civ.P. 166-A. One unique aspect of appellate review of summary judgment procedure is that a court's refusal to grant summary judgment is usually an interlocutory order which cannot be reviewed for want of finality. When all parties move for summary judgment on all issues, the resulting judgment is final, and the appellate court may review the trial court's refusal to grant summary judgment. The authority to do so derives from the rules of appellate procedure which provide that an appellate court should render the judgment the trial court should have rendered when jurisdictionally

it may do so, and the interests of justice do not require a remand. Tex.R.App.P. 81(b) (judgment in the courts of appeals); Tex.R.App.P. 180 (judgment in the supreme court); *Tobin v. Garcia*, 159 Tex. 58, 316 S.W.2d 396, 400–01 (1958); *accord Jones v. Strauss*, 745 S.W.2d 898 (Tex.1988).

The procedural posture is no different when summary judgment is granted on one but not all of several grounds advanced in the motion. The trial court's failure to base its judgment on alternative grounds is not interlocutory because a final appealable judgment has been rendered. A reviewing court may resolve all legal questions presented and render such judgment as the trial court should have rendered. Tex.R.App.P. 81(c).

The interests of judicial economy recommend such a procedure, and there are no countervailing policy concerns. The non-movant not only has the opportunity to raise all issues which preclude judgment at the time the motion is considered, but must do so in order to raise certain complaints later on appeal.[3] *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex.1979). There is no compelling reason why the non-movant should get a free walk when judgment should be granted against him as a matter of law, but the trial court failed to include that reason as a basis for judgment.

Instead, this case will be remanded, and presumably there will be a trial and a second appeal, at which time the parties will finally learn what we could tell them today, whether State Farm is entitled to judgment as a matter of law.[4] Rather than put the

---

2. Contrary to the opinions of Chief Justice Phillips and Justice Hecht, I am not arguing that an appellate court "should always" address all grounds for summary judgment presented by motion in the trial court but not expressly ruled on by the trial court. 858 S.W.2d 382. Of course, if a grounds was abandoned or otherwise withdrawn, it would be improper for the appellate court to render judgment upon it. *See, e.g. City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex.1979).

3. Under Texas procedure, the non-movant does not need to respond to the summary judgment to complain that the movant failed to establish entitlement to judgment; however, any other

reasons for avoiding judgment are waived in the absence of a complaint. *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex.1979).

4. The disposition of this case, a general remand, conflicts with the procedure recommended by the court recently in *State v. Flag–Redfern*, 852 S.W.2d 480, 482, n. 6 (Tex.1993), in which the court held: "Ordinarily, when a trial court has specified the ground on which it was granting summary judgment, we must remand the cause *to allow the trial court to rule on the remaining grounds.*" I do not recommend *Flag–Redfern's* statement of summary judgment procedure either, however. If the trial court grants sum-

parties through this ordeal, with the resulting cost and loss of time for the parties, and the waste of judicial resources, I would give answers to the questions of law today.

In its motion for summary judgment, State Farm alleged that G.W. breached his contract by failing to cooperate with State Farm in its defense against S.S.'s cause of action. As a result, State Farm urges that the breach of contract should result in an affirmance of its summary judgment.

In a motion for summary judgment based on an alternative ground of recovery, the trial court must determine whether the movant carried its burden to show no genuine issue of material fact existed, accept the evidence favorable to the non-movant as true, and indulge every reasonable inference in the non-movant's favor. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985).

In the instant case, State Farm alleges that G.W. breached the insurance contract by failing to cooperate with the insurance company. The relevant terms of the contract state that "the insured shall, if a claim is made or a suit is brought against the insured, immediately forward to the company every demand, notice, summons or other process received by him or his representative...." The policy further provides that the insured must cooperate with the company during the defense of the claim and "shall not, except at his own cost, voluntarily make any payment, assume any obligation, or incur any expense." There is also a "no action" clause that provides that no action shall lie against State Farm for the recovery of any claim unless "the insured's obligation to any shall have been finally determined either by judgment against the insured after the actual trial or by written agreement of the insured, the claimant, and the company."

Generally, a person who sues for performance of a contractual obligation whether as a party to the contract or a third party beneficiary must prove that all contractual conditions prerequisite to performance were satisfied. *See Ratcliff v. Nat'l County Mut. Fire Ins.,* 735 S.W.2d 955, 957 (Tex.App.—Dallas 1987, writ dism'd w.o.j.). The same rule applies to insurance contracts. *Id.; Dairyland County Mut. Ins. Co. v. Roman,* 498 S.W.2d 154, 157 (Tex. 1973). The policy provision requiring that the insured immediately forward every demand, notice, summons or other process of a claim or suit being brought against it is a condition precedent to the insurer's liability under the policy. *See Filley v. Ohio Casualty Ins. Co.,* 805 S.W.2d 844, 847 (Tex. App.—Corpus Christi 1991, writ denied). By providing notice to the insurer, the insured's duty to cooperate precludes the formation of any agreement which would operate to impose liability upon the insurer or would deprive the insurer of a valid defense. *McGuire v. Commercial Union Ins. Co. of New York,* 431 S.W.2d 347, 351–52 (Tex.1968).

The obligation of the insured to notify the insurer must actually prejudice or deprive the insurer of a valid defense. *Id.* at 353; *see Ratcliff,* 735 S.W.2d at 957. For instance, prejudice can result when the insurer is not notified of a suit until after a judgment is rendered. *See, e.g., Kimble v. Aetna Casualty and Surety Co.,* 767 S.W.2d 846 (Tex.App.—Amarillo 1989, writ denied); *Ratcliff,* 735 S.W.2d at 956. In *Kimble,* the court held that prejudice resulted to the insurer when it did not receive notice until after default judgment was rendered even though the option to file for a new trial was still available to the insured. *Id.* 767 S.W.2d at 851. As a result, the insurance company could assert as a valid defense lack of notice in a later declaratory judgment action. *Id.* at 851.

mary judgment again, there would inevitably be a second appeal, and we would be in no better position than we are today. The trial court's reasons on questions of law are not a prerequisite to the exercise of our jurisdiction. *See Guaranty County Mutual Ins. Co. v. Reyna,* 709 S.W.2d 647, 648 (Tex.1986) ("We must uphold a correct lower court judgment on any legal theory before it, even if the court gives an incorrect reason for its judgment.") I would overrule *Flag-Redfern* to the extent that it holds an appellate court may not affirm a summary judgment on alternative grounds asserted in the motion.

However, actual knowledge of a claim should not be confused with notice of a suit. *See Members Ins. v. Branscum*, 803 S.W.2d 462, 466 (Tex.App.—Dallas 1991 no writ). Notice to the insurance company of a claim against the insured does not relieve the insured from his duty to give notice of the initiation of a lawsuit, unless the insurance company actually received notice of the lawsuit from another source. *Cf. Allstate Ins. Co. v. Pare*, 688 S.W.2d 680 (Tex.App.—Beaumont 1985, writ ref'd n.r.e.) (holding insured's failure to forward suit papers not prejudicial when insurer had knowledge). The purpose of notifying the insurer is twofold. First, it enables the insurer to control the litigation and interpose a defense. Secondly, it advises the insurer that an insured has been served with process in order for the insurer to timely file an answer. *Weaver v. Hartford Accident & Indem. Co.*, 570 S.W.2d 367 (Tex.1978).

In the instant case, G.W. breached his duty to cooperate by failing to give notice of the suit initiated by S.S. State Farm was deprived of asserting as a valid defense that all conditions precedent—namely notice—were not followed. The failure to give notice until after the agreed judgment was final subjected State Farm to the terms of an agreed judgment awarding S.S. $1 million dollars and the assignment of all G.W.'s claim of coverage of indemnity and other claims against State Farm. An insurer has no obligation to indemnify an insured who fails to cooperate and prejudices the insurer's rights and obligations under the policy. As a result of the breach of contract, State Farm's motion for summary judgment should be affirmed.

Justice ENOCH joins this opinion.

**HECHT, Justice, dissenting.**

I would hold that as a matter of law S.S.' claim against G.W. is for injuries which he intentionally caused and which are thus excluded from coverage under his homeowner's policy. Accordingly, I dissent.

### I

When G.W. had sexual intercourse with S.S., he knew he had genital herpes, but he did not tell S.S. G.W. was a doctor of optometry, and he had read medical books on the disease. He recognized its symptoms and knew that he had suffered them for years. He knew that herpes is highly contagious and that it is transmitted by sexual contact. He knew he had experienced an outbreak of symptoms—open sores on his genitals—three to four weeks before the night of his thirtieth birthday when he met S.S. at a nightclub and took her to his house. He knew all of this, but he did not tell S.S. before he had sexual intercourse with her. He did not use a condom. The next morning, when he felt the symptoms of his disease coming on again, he told her. She was, in her words, "real upset". The next day G.W. told S.S. he wanted to continue to see her and "be her lover". When she declined, he said, "Well, you have to date me because I may have given you herpes." A week later she began experiencing the symptoms of herpes.[1]

Had S.S. known G.W. had herpes, she would not have had intercourse with him. G.W. did not forget to tell her about his condition before they had intercourse; he intentionally did not tell her. His reason, he says, was that he believed he could not transmit the disease unless he was experiencing its symptoms, which did not begin to occur until the morning after their encounter. Assuming that this truthfully ex-

---

**1.** The Court objects to any reliance on S.S.' testimony when it conflicts with G.W.'s. There is no significant contradiction between their respective accounts of the circumstances. Even if there were, the Court's objection overlooks the fact that S.S. is the *claimant* here. Her claim can certainly be no stronger than her own testimony. It is entirely appropriate not only to cite it but to hold her to it.

The Court also objects to any overstatement of G.W.'s medical credentials. While I do not suggest that G.W. was a medical doctor or an expert on herpes, he is an optometrist and does claim to have read medical literature on the subject of herpes.

plains his motivation, it does not alter the fact that all G.W.'s actions were intentional.

I agree with the Court that a person is considered to have intended those consequences which are substantially certain to follow from his actions. The Court focuses on whether G.W. was substantially certain that his liaison with S.S. would cause her to contract herpes. This is not, in my view, the relevant inquiry. The question, rather, is whether G.W. was substantially certain that having sexual intercourse with S.S. without first disclosing his condition to her would *injure* her, even if she did not contract herpes. It was no surprise to G.W., nor could it have been, that S.S. was extremely upset at having been exposed to herpes without her knowledge. The exposure, and whatever injuries resulted, were caused intentionally.

The Court refers to encounters like this one as "the voluntary sexual acts of consenting adults". *Ante* at 379. This is a serious mischaracterization of S.S.' behavior. S.S. did not consent to exposure to herpes. She was unaware of G.W.'s condition, and had she known, she would have avoided it. She volunteered and consented to their encounter in the sense that she was not coerced against her will. But she did not consent in any legally significant way. RESTATEMENT (SECOND) OF TORTS § 892B (1979).

To conclude as the Court does that G.W.'s conduct may not have been intentional, in my view, defies common sense. He may have been mistaken about the nature of herpes, but he was very deliberate in his conduct toward S.S. I would hold that this conduct is not covered by G.W.'s homeowner's policy.

## II

State Farm also contends that it owes G.W. and S.S. nothing because G.W. did not cooperate in the defense of S.S.' claim. When S.S. sued G.W., he did not defend against her claim but agreed to the rendition of a judgment against him for $1,000,-000, provided that S.S. would make no efforts to collect any part of it from him. He then assigned S.S. all actions he might have against his homeowner's insurance carrier, State Farm Fire and Casualty Company, keeping for himself the right to two-thirds of any damages S.S. recovered against State Farm for bad faith or statutory violations. State Farm argues that G.W.'s actions demonstrate a lack of cooperation as a matter of law.

The trial court did not grant summary judgment on this ground, and the Court therefore holds that it cannot be considered on appeal. I disagree, for the reasons set forth by JUSTICE GONZALEZ in his dissenting opinion. Rule 81(c), TEX.R.APP.P., requires the court of appeals, when reversing a judgment of the trial court, to render the judgment that should have been rendered, unless a remand is necessary. This rule alone authorizes the appeals court to render judgment on a ground urged for summary judgment but not ruled on by the trial court. The rule encourages trial courts to be specific in their rulings without risking remands, rather than simply granting summary judgment motions in their entirety in order to maximize the chances of affirmance. However, I would not go so far as to hold that an appellate court should always address grounds for summary judgment raised by motion in the trial court but not expressly adjudicated. If it appears that a ground was abandoned in the trial court, or was not fully addressed, or has not been fully argued on appeal, it may be inappropriate to render judgment upon it.

In this case, as egregious as G.W.'s conduct appears to have been, I cannot determine from the record before us that State Farm has established its noncooperation defense as a matter of law. At one point State Farm denied coverage of S.S.' claim, and it is not clear whether G.W. previously breached his duty to cooperate, or whether any subsequent breach was excused. I intimate no view on whether State Farm's motion should be granted on this ground on remand.

\* \* \* \* \* \*

I believe the summary judgment that the trial court did grant was proper. Accord-

388

ingly, I would reverse the judgment of the court of appeals and affirm the judgment of the trial court. I therefore dissent.

