TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-99-00031-CV






Churchill Forge, Inc., Appellant



v.



Joann Hamilton Brown, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT


NO. 98-01327-A, HONORABLE PAUL R. DAVIS, JR., JUDGE PRESIDING







 Churchill Forge, Inc. appeals the summary judgment granted in favor of Joann
Hamilton Brown in its suit seeking reimbursement for repairs to residential rental property. We
will affirm the summary judgment. 


Background and Procedural History


 On September 19, 1995, Joann Hamilton Brown (Brown) co-signed a lease with
her adult son, Carl Jeffrey Brown, for an apartment in Remington House Apartments. Although
Brown signed the lease beneath a heading entitled "Resident or Residents," she never lived in the
apartment with Carl. On March 29, 1996, a fire which allegedly originated in Carl's apartment
caused damage to the apartment complex. Churchill Forge, Inc., owner of the Remington House
Apartments, sued Brown (1) for breach of lease (2) based on the following reimbursement clause in the
lease:


REIMBURSEMENT: You must promptly reimburse us for loss, damage, or cost
of repairs or service caused anywhere in the apartment community by your or any
guest's or occupant's improper use or negligence. Unless the damage or stoppage
is due to our negligence, we're not liable for--and you must pay for--repairs,
replacement costs, and damage to the following if occurring during the Lease
Contract term or renewal period: (1) damage to doors, windows, or screens; (2)
damage from windows or doors left open; and (3) damages from wastewater
stoppages caused by improper objects in lines exclusively serving your apartment. 
We may require payment at any time, including advance payment of repairs for
which you're liable. Any delay in our demanding sums you owe is not a waiver.



 Brown moved for summary judgment contending she is not liable for breach of the
lease. The trial court granted the summary judgment, and Churchill appeals.


Discussion


 We are guided by the well-established standards for reviewing summary judgments. 
See Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548-49 (Tex. 1985). A summary
judgment is appropriate when there are no material fact issues and the movant is entitled to
judgment as a matter of law. See Tex. R. Civ. P. 166a(c). When a summary judgment is granted
on general grounds we must consider on appeal whether any theory asserted by the movant will
support the summary judgment. Rogers v. Ricane Enters. Inc., 772 S.W.2d 76, 79 (Tex. 1989). 
If any theory advanced is meritorious, the summary judgment will be affirmed. Id. The appellant
must negate all grounds on appeal. State Farm Fire & Cas. Co. v. S.S., 858 S.W.2d 374, 381
(Tex. 1993).

 We must determine first whether chapter 92 of the Texas Property Code governs
Churchill's action, and if so, whether the lease provision satisfies the requirements of section
92.006(e). See Tex. Prop. Code Ann. § 92.006(e) (West 1995) ("Prop. Code").


Application of Texas Property Code Chapter 92

 Chapter 92 applies to the relationship between landlords and tenants of residential
rental property. Prop. Code § 92.002. Subchapter B of chapter 92 covers conditions materially
affecting the physical health and safety of the ordinary tenant, and prescribes the rights and duties
of landlords and tenants regarding repairs. See Prop. Code §§ 92.006(c); .052, .054 & .056. 
Specifically, subchapter B identifies what a landlord is obligated to repair and when, and the
remedies for a tenant if a landlord fails to make repairs. See Prop. Code §§ 92.052, .054 & .056. 
For example, a landlord must repair conditions caused by normal wear and tear, if the tenant
notifies the landlord of the condition, is not delinquent on rent, and the condition materially affects
the physical health and safety of the ordinary tenant. Prop. Code. § 92.052(a), (b). If a landlord
is obligated to repair but does not, a tenant may terminate a lease or deduct the cost of repair from
rent. See, e.g., Prop. Code § 92.056(b)(1), (3). A landlord's duties and a tenant's remedies
under Subchapter B cannot be waived except, as relevant in this case, by satisfying section
92.006(e). Prop. Code § 92.006(c). If a landlord and a tenant agree to shift to the tenant the
expense and obligation to repair "any condition in subchapter B," all of the following conditions
must be met: 


(1) at the beginning of the lease term the landlord owns only one rental dwelling;


(2) at the beginning of the lease term the dwelling is free from any condition
which would materially affect the physical health or safety of an ordinary
tenant;


(3) at the beginning of the lease term the landlord has no reason to believe that
any condition described in Subdivision (2) of this subsection is likely to occur
or recur during the tenant's lease term or during a renewal or extension; and 


(4) (A) the lease is in writing; 


 (B) the agreement for repairs by the tenant is either underlined or printed in 
boldface in the lease or in a separate written addendum; 


 (C) the agreement is specific and clear; and 


 (D) the agreement is made knowingly, voluntarily, and for consideration.



Prop. Code § 92.006(e).

 Churchill contends first that chapter 92 does not apply to Brown's situation, and
second, that the fire damage is not a condition covered by subchapter B. Thus, according to
Churchill, the reimbursement provision of the lease is not subject to the requirements of chapter
92 and obligates Brown to reimburse Churchill for the cost of repairing the fire damage to the
entire complex. Brown argues that chapter 92 applies and that the reimbursement provision does
not comply with section 92.006(e) and is thus unenforceable. See Prop. Code § 92.006(e).

 Churchill first argues that chapter 92 does not apply because Brown did not use the
apartment as her permanent residence. Chapter 92 defines "tenant" as "a person who is
authorized by the lease to occupy a dwelling to the exclusion of others and . . . who is obligated
under the lease to pay rent." Prop. Code § 92.001(6). "Dwelling" is defined as "one or more
rooms rented for use as a permanent residence under a single lease to one or more tenants." 
Prop. Code § 92.001(1). Churchill argues that given the definition of "dwelling," chapter 92
does not protect Brown because she did not occupy the apartment as her permanent residence. 
We disagree. "Dwelling" requires that the leased space be used as a permanent residence. No
one disputes that the subject apartment was occupied by Carl as his residence. As alleged by
Churchill, Carl was a lessee and occupant of the apartment at all times material to the case. A
"tenant" is one authorized to occupy a dwelling, not necessarily one who in fact occupies the
dwelling. By signing the lease, Brown was authorized to occupy the apartment, even though she
chose not to live there with her son. We reject Churchill's argument that chapter 92 requires the
apartment to be Brown's permanent physical residence.

 Churchill also argues that section 92.061 supports its position that chapter 92 does
not apply. Section 92.061 provides:


The duties of a landlord and the remedies of a tenant under this subchapter are in
lieu of existing common law and other statutory law warranties and duties of
landlords for maintenance, repair, security, habitability, and nonretaliation, and
remedies of tenants for a violation of those warranties and duties. Otherwise, this
subchapter does not affect any other right of a landlord or tenant under contract,
statutory law, or common law that is consistent with the purposes of this
subchapter or any right a landlord or tenant may have to bring an action for
personal injury or property damage under the law of this state. 


Prop. Code § 92.061. Churchill maintains that section 92.061 limits the applicability of
subchapter B, and indicates that Churchill's cause of action for property damages is not subject
to the requirements of subchapter B.

 Churchill relies on Timberwalk Apartments, Partners, Inc. v. Cain, 972 S.W.2d
749 (Tex. 1998) and Moreno v. Brittany Square Associates., L.P., 899 S.W.2d 261 (Tex.
App.--Houston [14th Dist.] 1995, writ denied), as support for its position that chapter 92 does
not apply to property damage cases. In Moreno and Timberwalk, both personal injury cases,
neither tenant brought a claim pursuant to chapter 92 and neither attempted to invoke the remedies
of chapter 92 or subchapter B. Instead, the landlords sought to use chapter 92 as a shield from
liability. See Timberwalk, 972 S.W.2d 753-54; Moreno, 899 S.W.2d at 262. The respective
courts explained that subchapter B governs disputes between landlords and tenants regarding
property repairs and establishes the procedures for tenants and landlords regarding conditions that
need to be repaired. See Timberwalk, 972 S.W.2d at 755; Moreno, 899 S.W.2d at 263. Relying
on section 92.061, both courts concluded that subchapter B did not apply to the tenant's personal
injury actions. See Timberwalk, 972 S.W.2d at 755 (error to instruct jury based on section
92.052); Moreno, 899 S.W.2d at 263 (plaintiff not required to comply with chapter 92 notice
provisions). As pointed out in its brief, Churchill seeks to hold Brown responsible for repairing
the apartment complex based exclusively on the lease reimbursement clause and not on a
negligence theory. Chapter 92 expressly applies to disputes regarding repairs--precisely the
dispute in this case. Accordingly, we reject Churchill's reliance on section 92.061.

 In its second argument, Churchill contends that damage caused by a tenant is not
a "condition covered by subchapter B," as required for the application of section 92.006(e). 
Subchapter B distinguishes conditions caused by a tenant (3) from those caused by something other
than the tenant. (4) Based on this distinction, Churchill concludes that damages caused by a tenant
are "expressly excluded" from subchapter B. We again disagree. 

 In its petition, Churchill complains of extensive damage to its apartment complex
due to a fire started in the apartment Brown leased and seeks reimbursement for the repairs. As
stated earlier, subchapter B was intended to govern disputes between a landlord and a tenant over
repairs. Timberwalk, 972 S.W.2d at 755. In addition, section 92.054(a) of subchapter B includes
conditions resulting from an insured casualty loss such as fire or smoke. Prop. Code § 92.054(a). 
By its terms, subchapter B applies to repairs regardless of the source. For problems caused by
a tenant, subchapter B limits the obligations of the landlord to repair and the tenant's remedies. 
However, this "limitation" does not render subchapter B inapplicable or the tenant automatically
responsible for the expense. By agreement, the landlord and tenant may shift to the tenant the
obligation to pay for repairing the damage caused by the tenant if the lease provision meets the
requirements of section 92.006(e). Because Churchill seeks reimbursement for the cost of repairs
and damages due to fire, a condition expressly covered by subchapter B, we conclude subchapter
B applies. Accordingly, the lease provision must satisfy the requirements in section 92.006 (e)
to be enforceable.


Application of Section 92.006(e)

 According to section 92.006(e), a lease provision that shifts the burden of repair
from the landlord to the tenant must satisfy all requirements of the section. Prop. Code
§ 92.006(e). Because the trial court granted summary judgment without specifying the grounds,
we must affirm the summary judgment if the lease provision failed to satisfy any one of section
92.006(e)'s requirements. See State Farm Fire & Cas. Co., 858 S.W.2d at 380.

 Churchill's lease provision reflects at least two deficiencies. Section 92.006(e)
requires that the landlord own only one rental dwelling at the beginning of the lease term. Prop.
Code § 92.006(e)(1). As stated earlier, "dwelling" means one or more rooms rented for use as
a permanent residence under a single lease to one or more tenants. Prop. Code § 92.001(1). 
According to Churchill's discovery responses, it owned eighteen apartments in the building in
which the fire occurred.

 Section 92.006(e) also requires that the lease provision be in writing, and either
underlined, printed in boldface or contained in a separate written addendum. Prop. Code
§ 92.006(e)(4). Here, the lease provision obligating the tenant to repair is not in bold print or in
a separate addendum. According to the copy of the lease in the record, only the sentence which
obligates the tenant to pay for repairs to doors, window, screens and wastewater stoppage is
underlined. The first sentence, which Churchill contends broadly obligates the tenant to
reimburse for loss, damage or cost of repairs or service caused anywhere the in apartment
community, is not underlined. Moreover, the provision appears on page two of a six-page single-spaced typed and double column document. We conclude the lease provision does not meet
section 92.006(e)(4)'s requirement of being conspicuous. See id. 


Conclusion


 Having concluded that seeking reimbursement for repairs caused by fire damage
is a condition covered by subchapter B, and that the lease provision does not satisfy the
requirements of section 92.006(e), we hold that the lease provision is unenforceable. We overrule
Churchill's sole issue and affirm the summary judgment. 



 

 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices Kidd and Patterson

Affirmed

Filed: November 18, 1999

Do Not Publish Released for publication November 29, 2001. Tex. R. App. P. 47.3(c).

1. Churchill sued Carl; however, he is not a party to this appeal.
2. Churchill also sued Brown for negligence but the summary judgment order states that
Churchill dismissed its negligence cause of action. Only the issue of breach of lease is before this
Court. 
3. Although not relevant to this case, subchapter B also includes conditions caused by a lawful
occupant in the tenant's dwelling, a member of the tenant's family or a guest or invitee of the
tenant. See Prop. Code §§ 92.052, .054. 
4. For example, section 92.052 bases the landlord's obligation to repair on conditions caused
by normal wear and tear. See Prop. Code § 92.052(b). Section 92.054 differentiates casualty
losses "not caused by the negligence or fault of the tenant, a member of the tenant's family, or
a guest or invitee of the tenant . . ." from casualty losses caused by negligence or fault. See Prop.
Code § 92.054(b), (c).