IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF TEXAS
 
════════════
No. 07-0760
════════════
 
 
Greg Tanner and 
Maribel Tanner, Individually and as 
Next Friends of K.T. and R.T., Minor Children, Petitioners,
 
v.
 
Nationwide Mutual Fire 
Insurance Company, Respondent
 
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the Eleventh District of Texas
════════════════════════════════════════════════════
 
Argued October 14, 2008
 
 
 
Justice Brister filed a dissenting 
opinion.
 
 
Anyone who 
drives a huge 4-ton pickup at 100 miles an hour through city streets during rush 
hour “ought to know” that someone is going to get hurt. This insurance policy 
excluded such conduct, so the judges of the trial court and court of appeals 
correctly denied coverage. Because the Court holds otherwise, I respectfully 
dissent.
There will 
never be a more extreme case than this. After being pulled over by a state 
trooper around 5 p.m. on Interstate 35 in San Marcos, Richard Gibbons took off in his 
Ford F-350 heavy-duty truck, with the trooper and then several local police cars 
in hot pursuit. Gibbons cut through residential neighborhoods at more than 80 
miles an hour, careening around corners and running through yield and stop 
signs. Turning onto Highway 80, he hit speeds above 100 miles an hour, swerving 
head-on into oncoming traffic to pass, cutting across open fields, and driving 
around a police roadblock. Ultimately he smashed into the Tanners= car at an intersection, 
which slowed him down only for a moment. He was finally stopped when police shot 
out half of the truck=s six tires. Charged with 
eight felony counts, Gibbons was released on $10,000 bail; true to form, he fled 
and has never been prosecuted.
The $300,000 
auto liability policy issued to Gibbons excluded “[p]roperty damage or bodily injury caused intentionally by or 
at the direction of an insured, including willful acts the result of which the 
insured knows or ought to know will follow from the insured=s conduct.” “Ordinarily,” we have said, “whether an insured intended harm or 
injury to result from an intentional act is a question of fact.”[1] But “ordinarily” means that in some 
extreme cases it is not a question of fact, but a question of law. “Ought 
to know” is an objective standard, so there must be some outer boundaries beyond 
which an insured=s 
conduct is either so harmless or so reckless that no fact question is 
presented.
Texas courts have 
apparently not addressed whether a high-speed police chase falls within the 
intentional-acts exclusion. But this Ohio 
insurance policy was issued to Gibbons in Ohio, 
and Ohio 
courts have. “[W]here an insured willfully and purposefully attempts to elude 
police in an automobile chase through an urban area in reckless disregard of 
traffic control devices, his actions are substantially certain to result in 
injury.”[2] This is both sensible and consistent with 
Texas law, 
which applies an intentional-injury exclusion if an 
insured “intends the consequences of his act, or believes that they are 
substantially certain to follow.”[3]
The 
Court=s main mistake 
is in viewing this accident far more narrowly than the policy does. The Court 
says the exclusion requires “intentional damage, not just intentional conduct,” 
but the exclusion applies even if he did not intend damage but “ought to 
know [it] will follow from [his] conduct.” The Court requires proof that the 
insured “intentionally injured the Tanners,” but the exclusion does not 
require that an insured know precisely who or what he would hit. The Court says 
reasonable jurors could conclude the chase could have ended with Gibbons 
“rolling his vehicle” or “hitting a fixed object,” but either would still be the 
kind of property damage he ought to have known would follow. The Court says 
Gibbons ought to have known the police might “discontinu[e] the pursuit,” though it is a mystery why an 
objective, reasonable-person standard would include such an unreasonable hope. 
The Court focuses narrowly on the rural area of “open fields, corn fields” where 
an accident finally occurred, forgetting all of Gibbons= willful acts on I-35, 
Highway 80, and the residential areas through which this high-speed police chase 
passed. And the Court emphasizes that Gibbons applied his brakes before the 
collision, even though someone driving a truck this big this fast in these 
circumstances ought to know an accident would follow even if he tried to 
avoid it at the last second. In sum, the Court avoids this policy exclusion by 
focusing narrowly on what Gibbons knew a split second before this precise 
crash.[4]
The rest of 
the Court=s opinion 
consists largely of red herrings and straw men:
 
$                   
the insurer did not object to the jury charge, 
but there was no reason to do so as the charge merely quoted the policy;
 
$                   
the current policy exclusion is more restrictive 
than a former one, but the circumstances here meet either; and
 
$                   
Texans need coverage from drivers who “intentionally speed or run red 
lights,” but Gibbons did a lot more than run a red light.
 
It should not 
be debatable whether an insured “ought to know” that harm would follow from this 
kind of outrageous driving. The police certainly thought so, breaking off the 
chase in a residential area because it was too dangerous, and shooting at the truck (an act requiring 
supervisory approval) because the officers “felt like we needed to end it before 
anyone else was injured.” The Tanners= attorney also thought so, 
conceding in his opening statement that accidents like this one “happen[] all the time when people run from police.” Indeed, 
the most surprising thing on this record is not that there was an accident, but 
that someone wasn=t killed. If the Court 
“cannot say on this record” that Gibbons ought to have known damage would follow 
his conduct, then courts can never say it. As a result, 
this explicit exclusion does not mean what it says, but whatever jurors decide 
they want it to say.
Not 
surprisingly, that is precisely what the Tanners= counsel urged jurors to 
do. In his opening, he summarized the issue for trial as follows: “Does 
Nationwide have a technicality in this document buried in one sentence of one 
page that somehow lets them off the hook or not?” Exclusions, of course, are not 
technicalities C they 
are part of the contract. Jurors may naturally tend to favor a victimized family 
rather than a big insurance company, but judges exist to make sure contracts 
mean what they say, no matter whom the judges or jurors want to win.
If insurers 
must pay for intentional, criminal acts by policyholders like Gibbons, they will 
have to charge everyone higher premiums. As a result, some drivers will simply 
do without insurance. Ignoring the policy terms in this case may seem 
compassionate, but in the long run it may prove otherwise.
By any 
measure, an insured like Gibbons “ought to know” that driving like he did would 
hurt someone or something sooner or later. As his insurer did not agree to pay 
for that kind of intentional conduct, I would affirm the courts below.
 
_______________________________
Scott 
Brister
Justice
 
OPINION 
DELIVERED: April 17, 2009







[1] State Farm Fire & Cas. Co. v. 
S.S., 858 S.W.2d 374, 378 (Tex. 1993).

[2] Nationwide Mut. Ins. Co. v. Finkley, 679 N.E.2d 1189, 
1191 (Oh. Ct. App. 1996).

[3] S.S., 858 S.W.2d at 378 (citing 
Restatement (Second) of Torts 
' 8A 
(1965)).

[4] See City of Keller v. Wilson, 
168 S.W.3d 802, 812 (Tex. 2005) (“[I]f evidence may be legally sufficient in one 
context but insufficient in another, the context cannot be disregarded even if 
that means rendering judgment contrary to the jury=s 
verdict.”).