Charles **SEITER**, Jr., et al., Petitioners,

v.

Joe **VEYTIA** et ux., Respondents.

No. C–7128.

Supreme Court of Texas.

July 13, 1988.

Rehearing Denied Oct. 5, 1988.

Sabrina C. Arellano, Akin, Gump, Strauss, Hauer & Feld, San Antonio, for petitioners.

Luther H. Soules, III and Robert E. Etlinger, Soules, Reed & Butts, San Antonio, for respondents.

## OPINION

RAY, Justice.

The issue presented by this usury case is whether federal law, which eliminates interest rate limitations on loans secured by first liens on residential real property, preempts state-imposed interest rate ceilings. The trial court granted summary judgment on the ground that *Tex.Rev.Civ. Stat.Ann.* art. 5069–1.06 (Vernon 1987), is preempted by 12 U.S.C. 1735f–7 (1980). The court of appeals declined to reach the question of whether federal law preempts. Instead it reversed and remanded by holding that the federal statute was not intended to include late charges, which are the subject of this suit. 740 S.W.2d 64. We granted writ of error to address the preemption question, and now affirm the judgment of the court of appeals.

On July 20, 1981, the Veytias purchased a home from the Seiters. In connection with the sale, the Veytias executed two promissory notes and two deeds of trust which are the subject of this suit. The notes were made payable to the Seiters, and the deeds of trust secured payment of the notes. The Veytias defaulted on the notes, but the parties were able to reach an agreement which modified the original obligations. The agreement was incorporated into a document entitled "Modification and Extension of Real Estate Notes and Liens," and was executed on July 25, 1984. The modification agreement included among its provisions a paragraph providing for late charges of $20.00 each day that any installment was overdue.

By September of 1985, the Veytias were again in default, and the trustee sent the Veytias a notice of trustee's sale. Joe Veytia then filed suit against the Seiters and the trustee to enjoin the trustee's sale. The suit also asked for damages for usurious interest charged by the Seiters. Specifically, the Veytias alleged that the $20.00 per day late charge contracted for in the modification agreement was usurious. The Veytias asked for forfeiture of principal, attorneys' fees, and other penalties under *Tex.Rev.Civ.Stat.Ann.* 5069–1.06(1) and (2) (Vernon 1987).

The Seiters successfully moved for summary judgment, based on the theory that *Tex.Rev.Civ.Stat.Ann.* art. 5069–1.06 (Vernon 1987) is preempted by 12 U.S.C. § 1735f–7 (1980). The court of appeals held that summary judgment was improper because 12 U.S.C. § 1735f–7 (1980) does not preempt usurious late charges. The court of appeals then proceeded to examine whether summary judgment could be upheld on another basis, finding that a fact issue was raised as to whether the Seiters demanded or charged usurious interest in the form of late charges in violation of *Tex.Rev.Civ.Stat.Ann.* art. 5069–1.06. The court of appeals reversed the summary judgment and remanded the cause for trial.

In order to encourage mortgage credit lending, Congress passed the Depository Institutions Deregulation and Monetary Control Act of 1980, (DIDMCA), Pub.L. No. 96–221, 94 Stat. 132 (1980), as amended by the Housing and Community Development Act of 1980, Pub.L. No. 96–399, 94 Stat. 1614 (1980). This legislation preempts certain areas of state law by eliminating state usury restrictions which establish mortgage usury ceilings. *See* St. Claire & Hogan, *The Revised Texas Usury Ceilings —A New Alice in Wonderland,* 14 St. Mary's L.J. 187, 233–34, (1983).

Congress provided a mechanism in DIDMCA whereby a state's own usury laws could apply, and a state could avoid preemption. DIDMCA was effective April 1, 1980, and preempted state law unless a state opted out prior to April 1, 1983. In order to opt out, a state had to adopt a law which explicitly stated that the state did not want the DIDMCA to apply. Section 501(a)(2)(B), Pub.L. No. 96–221, Title V, 94 Stat. 161, codified at 12 U.S.C. § 1735f–7 (1980).

Since DIDMCA came into effect, the Texas Legislature amended and supplemented Texas usury law by its Texas Omnibus Usury Bill, H.B. 1228, which became effective May 8, 1981. 1981 Tex.Gen.Laws, ch. 111 at 271 (H.B. No. 1228) (amending *Tex. Rev.Civ.Stat.Ann.* arts. 1302–1.01 to –7.05 (Vernon 1980 & Supp. 1982–1983); arts. 2461–4.01, –7.01 (Vernon Supp.1982–1983); arts 5069–1.01 to –51.19 (Vernon 1971 & Supp.1982–1983); *Tex.Ins.Code Ann.* art. 24.20 (Vernon 1981)). H.B. 1228 did not explicitly state that Texas did not want the DIDMCA to apply, as required by Section 501(a)(2)(B), and gave no other indication of any kind that Texas opted out of federal preemption in the area of residential real property. Moreover, in the meeting of the Committee on Financial Institutions, the author of H.B. 1228, Representative Bill Messer, specifically stated to the committee:

> This bill does not override the federal preemption of state usury laws in the federal House Bill 4986. That's the preemption of mortgages. It doesn't affect those. Those are preempted. There's no ceiling on them now, and we're not trying to override that.

*Tex. House Comm. On Financial Institutions Minutes,* 67th Leg. (Mar. 3, 1981).

■ Based on the language contained in H.B. 1228, and its legislative history, it is clear that Texas did not opt out of the DIDMCA. Therefore, for loans made after April 1, 1980 secured by first liens on residential real property, state usury laws do not apply, and federal law prevails.

■ We must next consider whether the federal act intended to include late charges which are the subject of this suit. While the DIDMCA makes no mention of late charges, the legislative history of the Act clearly states:

> In exempting mortgage loans from state usury limitations, the committee intends to exempt only those limitations that are included in the annual percentage rate. The committee does not intend to exempt limitations on prepayment charges, attorney fees, *late charges* or similar limitations designed to protect borrowers. (Emphasis supplied).

Pub.L. 96–221, S.Rep. 96–368, 96th Cong., 2d Sess., 1980, *U.S. Code Cong. & Admin. News* 236, 255.

The Seiters acknowledge that the DIDMCA did not intend to cover late charges. The Seiters point out, however, that in Texas, late charges are considered interest, and therefore a part of the annual percentage rate. *See Dixon v. Brooks,* 604 S.W.2d 330, 333 (Tex.Civ.App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.); *Watson v. Cargill, Inc. Nutrena Division,* 573 S.W.2d 35, 42 (Tex.Civ.App.—Waco 1978, writ ref'd n.r.e.) They argue that emphasis should be given to the first sentence quoted above, specifically "the committee intends to exempt only those limitations that are included in the annual percentage rate." Pub.L. 96–221, S.Rep. 96–368, 96th Cong., 2d Sess., 1980, *U.S.Code Cong. & Admin.News* 236, 255. The Seiters assert that the question of what charges are to be defined as interest within the federal preemption of the DIDMCA remains a matter of state law. *United Federal Savings & Loan Ass'n v. Cage,* 487 So.2d 171 (La.App. 4th Cir.1986). They reason that because in Texas late charges are considered interest, and therefore part of the annual percentage rate, late charges fall within the federal preemption. In other words, the Seiters argue that Texas' own common law of usury places late charges under federal legislation, which federal legislation removes interest rate ceilings and shields the Seiters from state penalties for usury.

By weaving back and forth between the DIDMCA and Texas usury opinions, the Seiters reach a conclusion that would have us place under the auspices of federal law, state interest limitations which Congress did not intend to remove. We decline to do so. The court of appeals correctly held that the federal statute did not preempt usurious late charges, and we affirm that holding.

Accordingly, we affirm the judgment of the court of appeals, which remanded the cause to the trial court.