COURT OF APPEALS












COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL PASO, TEXAS

 

VOLCANIC GARDENS MANAGEMENT         )

COMPANY, INC., d/b/a WET >N=
WILD            )

WATER WORLD,                                                )             
No.  08-03-00208-CV

                                                                              )

Appellant,                          )                 Appeal from the

                                                                              )

v.                                                                           )           
County Court at Law #3

                                                                              )

EL PASO ELECTRIC COMPANY,                     )           of El Paso County, Texas

                                                                              )

Appellee.                           )               
(TC# 2003-1597)

                                                                              )

 

 

MEMORANDUM  OPINION

 

Appellant Volcanic
Gardens Management Company, Inc. d/b/a Wet >N= Wild Water World (AWet >N= Wild@)
appearing pro se appeals from two partial summary judgments granted in
favor of Appellee El Paso Electric Company (AEPEC@), which became final when severed from
trial cause number 2000-2390.  On appeal,
Wet >N= Wild raises two issues, each with
several sub-issues, in which it contends the trial court erred in granting the
summary judgments because as a matter of law and of fact EPEC=s 5 percent late payment charge paid by
Wet >N= Wild and other EPEC customers is
illegal and is a usurious interest contrary to Texas usury law.   We affirm.








Wet >N=
Wild is an amusement park in Anthony, Texas and its electricity needs are provided by EPEC, an
electric utility company serving El
 Paso County, Texas.  In July 2000, Wet >N= Wild filed suit against EPEC.  In its original petition, Wet >N=
Wild alleged over billing due to improper classification and other overcharges.[1]  In its seventh amended petition, Wet >N=
Wild pleaded a usury claim, alleging that an arbitrary 5 percent late payment
penalty on EPEC=s billing
invoices to Wet >N= Wild and others was actually interest
in excess of the lawful rate permitted under Texas law and that the Public
Utility Commission rule permitting the charge is not valid because it is
contrary to usury law and outside the Public Utility Commission=s scope of authority.  On December 16, 2002, EPEC filed its first
motion for partial summary judgment with respect to the pleaded usury claim in
Wet >N= Wild=s
seventh amended petition[2].  In its first motion, EPEC asserted two
grounds for summary judgment on the usury claim:  (1) the 5 percent late payment penalty is not
usurious as a matter of law because it is not Ainterest@ subject to the statute; and
alternatively, (2) the 5 percent late payment penalty is not usurious as a
matter of law because the Public Utility Commission, acting within the
authority granted by the Legislature, specifically authorized the penalty in
both the Texas Administrative Code and the El Paso Electric Company Tariff.













While EPEC=s first motion was pending,[3]
Wet >N= Wild filed an eighth amended petition
on December 26, 2002, in which it alleged that the 5 percent late payment
penalty was illegal independent of usury law because:  (1) the Public Utility Commission had no
statutory authority to issue such an arbitrary and discriminatory regulation;
(2) the Public Utility Commission had no power to delegate the decision-making
function as to an arbitrary 5 percent Amay
be charged@
regulation to EPEC; and (3) the EPEC had no power to compose its own standards
for imposing or not imposing a 5 percent penalty, which applied the charge in
an arbitrary and discriminatory manner.[4]  On February 11, 2003, EPEC filed its second
motion for partial summary judgment, asserting that the 5 percent late payment
penalty is Afully
authorized by the Texas Public Utility Commission acting within its
legislatively granted authority to set electric utility rates and therefore
cannot be >illegal= as a matter of law.@[5]  Wet >N= Wild amended its petition on
March 3, 2003 and pleaded additional facts in support of its illegality
claim.  On March 27, 2003, the trial
court granted EPEC=s first
motion for partial summary judgment, and it granted EPEC=s
second motion for partial summary judgment on April 10, 2003.  On April 17, 2003, the trial court granted
Wet >N= Wild=s
amended motion to sever the illegal and usury claims upon which partial summary
judgment had been granted to EPEC and assigned a different cause number.  After a hearing, the trial court denied Wet >N=
Wild=s motion
for new trial and supplemented motion for new trial under the severed cause
number 2003-1597.  Wet >N=
Wild now appeals both partial summary judgments in this cause.

Partial
Summary Judgments

Standard
of Review








The function of
summary judgment is not to deprive a litigant of the right to a full hearing on
the merits of any real issue of fact, but rather to eliminate patently
unmeritorious claims and untenable defenses. 
City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678
n.5 (Tex. 1979), citing Gulbenkian v. Penn, 151 Tex. 412, 416,
252 S.W.2d 929, 931 (1952).  A party
moving for a traditional summary judgment has the burden of showing there is
genuine issue of material fact and that it is entitled to judgment as a matter
of law.  Nixon v. Mr. Property
Management Co., Inc., 690 S.W.2d 546, 548-49 (Tex. 1985); Duran v. Furr=s Supermarkets, Inc., 921 S.W.2d 778,
784 (Tex.App.--El Paso 1996, writ denied); see Tex.R.Civ.P. 166a(c). 
When a defendant moves for summary judgment, it has the burden to
conclusively negate at least one essential element of the plaintiff=s cause of action or conclusively
establish each element of an affirmative defense.  See American Tobacco Co. v. Grinnell, 951
S.W.2d 420, 425 (Tex. 1997).  In deciding
whether there is a disputed material fact issue precluding summary judgment,
all evidence favorable to the non-movant must be taken as true and all
reasonable inferences, including any doubts, must be resolved in the non-movant=s favor.  Nixon, 690 S.W.2d at 548-49; Duran,
921 S.W.2d at 784.  If the movant
establishes its right to a summary judgment as a matter of law, the burden then
shifts to the non-movant to present evidence creating any genuine issues of
material fact that would preclude summary judgment.  See Casso v. Brand, 776 S.W.2d 551,
556 (Tex. 1989); City of Houston, 589 S.W.2d at 678-79.  If the trial court=s
order granting summary judgment does not state the specific ground or grounds
for its ruling, summary judgment will be affirmed on appeal if any of the
theories advanced are meritorious.  See
State Farm Fire & Cas. Co. v. S.S., 858 S.W.2d 374, 380 (Tex. 1993); Carr
v. Brasher, 776 S.W.2d 567, 569 (Tex. 1989).

Usurious
Interest

In Issue Two, Wet >N=
Wild argues the trial court erred in granting EPEC=s
first partial summary judgment motion because the 5 percent late payment charge
was a usurious interest.  Specifically,
Wet >N= Wild asserts inter alia the
penalty charge violated the Texas Finance Code because on its face it
constitutes Ainterest@ which exceeds the maximum rate allowed
under the statute.  The Public Utility
Commission Substantive Rule at issue in this cause, Section 25.28(b)[6]
in the Texas Administrative Code, provides:

(b)        Penalty on delinquent bills for retail
service.  A one-time penalty not to
exceed 5.0 % may be charged on a delinquent commercial or industrial bill.  The 5.0 % penalty on delinquent bills may not
be applied to any balance to which the penalty has already been applied.  An electric utility providing any service to
the state of Texas shall not assess a fee, penalty, interest, or other charge
to the state for delinquent payment of a bill. 


 

16 Tex.Admin.Code '
25.28(b)(2000)(Pub. Util. Comm=n,
Bill Payment and Adjustments).








In its first
motion for partial summary judgment, EPEC argued the 5 percent late payment
penalty was not usurious as a matter of law because it is not Ainterest@
subject to the usury statute.  On appeal,
Wet >N= Wild argues the 5 percent late charge
was made for the detention of money owed past the due date stated on the
electric bill and constituted usurious interest at 5 percent for one month
equaling 60 percent per year, which is in excess of the maximum rate of
interest of 10 percent a year allowed by law. 
See Tex.Fin.Code Ann.
' 302.001(b)(Vernon Supp. 2004).

The essential
elements of a usurious transaction are: 
(1) a loan of money; (2) an absolute obligation to repay the principal;
and (3) the exaction of a greater compensation than allowed by law for the use
of the money by the borrower.  First
Bank v. Tony=s
Tortilla Factory, Inc., 877 S.W.2d 285, 287 (Tex. 1994); Holley v. Watts,
629 S.W.2d 694, 696 (Tex. 1982).  Under 

Section 301.002(a)(4) of the Texas
Finance Code,Ainterest@ means Acompensation
for the use, forbearance, or detention of money.@  Tex.Fin.Code
Ann. '
301.002(a)(4)(Vernon Supp. 2004).  AUsurious interest@ is defined as Ainterest
that exceeds the applicable maximum amount allowed by law.@ 
Tex.Fin.Code Ann. ' 301.002(a)(17)(Vernon Supp. 2004).








For the usury laws
to apply, there must be an overcharge by a lender for the use, forbearance, or
detention of the lender=s
money.  Stedman v. Georgetown Savings
& Loan Ass=n,
595 S.W.2d 486, 489 (Tex. 1979); Domizio v. Progressive County Mut. Ins. Co.,
54 S.W.3d 867, 873 (Tex.App.--Austin 2001, pet. denied).  The Adetention@ of money under the usury statute
arises when a debt has become due and the debtor has withheld payment without a
new contract giving him the right to do so. 
Domizio, 54 S.W.3d at 873; Tygrett v. University Gardens
Homeowners= Ass=n, 687 S.W.2d 481, 483
(Tex.App.--Dallas 1985, writ ref=d
n.r.e.), citing Parks v. Lubbock, 92 Tex. 635, 637, 51 S.W. 322,
323 (1899).  Because usury must be
founded on an overcharge by a lender for the use, forbearance or detention of
the lender=s money,
the definition of Adetention@ necessarily requires a lending
transaction between the parties.  Tygrett,
687 S.W.2d at 483; see also Parks, 92 Tex. at 638, 51 S.W. at 323 (the
purpose of adding the word Adetention@ was to meet the case when the debtor
should detain the money owed beyond the stipulated period of forbearance, and so
to provide that a promise to pay an additional sum for such detention should be
deemed interest, and not merely damages by way of a penalty to secure a prompt
performance of the contract).  Whether an
amount of money is interest does not depend on what the parties call it, but
rather on the substance of the transaction. 
First USA Mgmt., Inc. v. Esmond, 960 S.W.2d 625, 627 (Tex.
1997).  If there is no interest, there
can be no basis for usury.  See
Gonzales County Sav. & Loan Ass=n
v. Freeman, 534 S.W.2d 903, 906 (Tex. 1976).  








In its response to
partial summary judgment and on appeal, Wet >N= Wild relies on several Texas Supreme
Court cases which held certain late payment charges to be usurious
interest.  We find these cases, however,
to be distinguishable from the instant case. 
Citing to Veytia v. Seiter, 740 S.W.2d 64 (Tex.App.--San Antonio
1987), aff=d,
756 S.W.2d 303 (Tex. 1988), Wet >N= Wild states that under Texas law Alate charges are considered interest.@ 
In Seiter, the purchasers of real property defaulted on two
promissory notes secured by deeds of trust. 
Seiter, 756 S.W.2d at 304. 
The purchasers filed suit against the vendors and the trustee to enjoin
the property sale and sought damages for usurious interest charged by the vendors.  Id. 
The purchasers specifically alleged that a prior agreement provision
imposing a late charge of $20 per day for each day any payment installment was
overdue was usurious.  Id.  With respect to the late charges, the issue
in the case was whether federal preemption of state usury laws on mortgage
loans included the disputed late charges. 
Id. at 305.  The vendors
argued that the late charges fell within the federal preemption because in
Texas late charges are considered interest and were therefore part of the
annual percentage rate exempted from state usury limitations.  See id.  The Court found their argument unpersuasive,
holding that the federal statute did not preempt state law on usurious late
charges.  Seiter, 756 S.W.2d at
305.  For the purposes of the present
case, Seiter provides little guidance in determining whether the late
payment penalty at issue was interest. 
We note that the Seiter opinion cites to two court of appeals
decisions concluding that late charges are interest, however, we find their
holdings limited to the facts of each case. 
Id., citing Dixon v. Brooks, 604 S.W.2d 330, 333
(Tex.Civ.App.--Houston [14th Dist.] 1980, writ ref=d
n.r.e.)(10 percent late charge on matured interest payments on a purchase money
debt on real property was compensation for the detention of money and as such,
was interest); Watson v. Cargill, Inc., Nutrena Division, 573 S.W.2d 35,
41, 42 (Tex.Civ.App.--Waco 1978, writ ref=d
n.r.e.)(delinquency charge of 1 percent per month on past due balances added as
principal to a running account held to be interest within the meaning of the
usury statute).








Wet >N=
Wild also cites to Steves Sash & Door Co., Inc., v. Ceco Corp., 751
S.W.2d 473 (Tex. 1988), in support of its argument that a seller=s charge of interest in excess of the
legal rate as a late payment penalty is usurious interest.  In Steves Sash & Door Co., Inc., a
door manufacturer brought suit against the purchaser for payment due under a
sworn account and the purchaser counterclaimed asserting a usury claim.  Steves Sash & Door Co., Inc., 751
S.W.2d at 474.  The manufacturer admitted
that a usurious charge, interest charged during a thirty-day grace period, was
made in error as to part of the principal due. 
Id. at 474-75.  The Court held
that in the limited context of forfeiting principal as a statutory penalty for
usury, Aprincipal@ means that amount upon which interest
is charged or earned.  Id. at
474.  While the late payment charge in that
case was undisputedly a usurious interest, that case is not instructive in
determining whether the late payment penalty at issue here is Ainterest.@  Wet >N= Wild also directs our attention to two
additional Supreme Court cases, Meece v. Moerbe, 631 S.W.2d 729 (Tex.
1982) and Windhorst v. Adcock Pipe & Supply, 547 S.W.2d 260 (Tex.
1977), but again the cases cited do not address the issue of whether a
particular charge is Ainterest@ such that it constitutes a usurious
interest prohibited by law.  See Meece,
631 S.W.2d at 730 (attorney=s
fees for contesting a bill of review proceeding on a usury counterclaim were
recoverable under the usury statute); Windhorst, 547 S.W.2d at 260
(retailer=s charge
of a 1 1/2 percent per month Afinance
charge@ on a
customer=s open
account constituted usury subject to penalty even though customer had not paid
the charge).








In the present
case, under Section 25.28(b), the Public Utility Commission permits an electric
utility to charge a one-time penalty not to exceed 5 percent on a delinquent
commercial or industrial bill for electric service.  See 16 Tex.Admin.Code '
25.28(b).  The penalty does not apply to
any balance to which the penalty has already been applied.[7]  Id. 
A plain reading of the rule shows that the charge applied does not
accrue nor continue to accrue against the principal balance in exchange for the
detaining of a lender=s
money, in this case EPEC=s
payment due, assuming EPEC as a service provider can appropriately be
considered a lender.  Rather, the
5 percent late payment charge is simply a one-time penalty assessed for
late payment of any given bill.  The late
payment penalty is not compensation in exchange for the detention of money,
therefore it is not Ainterest@ as defined within Section 301.002(a)(4)
of the Texas Finance Code and cannot be considered a usurious interest under
Section 301.002(a)(17) of the Code.  See
also Rimco Enterprises, Inc. v. Texas Electric Service Co., 599
S.W.2d 362, 366 (Tex.Civ.App.--Fort Worth 1980, writ ref=d
n.r.e.)(finding that late charges in utility billings by an electric service
company did not arise from the use, forbearance, or detention of money,
therefore were not Ainterest@ within the meaning of the
statute).  The trial court did not err in
granting partial summary judgment in favor of EPEC as to Wet >N=
Wild=s usury
claim.  Issue Two is overruled.

Illegality
of 5 Percent Late Payment Penalty

In its first
issue, Wet >N= Wild raises several complaints in
support of its contention that the trial court erred in granting EPEC=s second motion for partial summary
judgment.  In its second motion, EPEC
sought partial summary judgment as to Wet >N= Wild=s
newly pleaded allegations that the late payment penalty was illegal
because:  (1) the Public Utility
Commission had no statutory authority to issue such an arbitrary and
discriminatory regulation; (2) the Public Utility Commission had no power to
delegate the decision making as to an arbitrary 5 percent Amay be charged@
regulation to EPEC; and (3) the EPEC had no power to compose its own standards
for imposing or not imposing a 5 percent penalty, which applied the charge in
an arbitrary and discriminatory manner. 
EPEC sought partial summary judgment on this illegality claim on the
ground that the 5 percent late payment penalty was fully authorized by the
Public Utility Commission acting within its legislatively granted authority to
set electric utility rates.








While EPEC=s second motion was pending, Wet >N=
Wild filed its ninth amended petition and included additional argument in
support of its illegality claim. 
Specifically, Wet >N= Wild asserted that the Public Utility
Commission acted outside of and contrary to its statutory authority under the
Texas Public Utility Regulatory Act (APURA@) because the late payment penalty as
written applies only to commercial and industrial accounts and is made
discretionary in violation of its statutory mandate against making a
discriminatory, inequitable, and arbitrary regulation pursuant to Texas
Utilities Code section 36.003.[8]  Wet >N= Wild also argued that even if the
Public Utility Commission had statutory authority to issue the late payment
penalty regulation, it had no power to delegate that decision-making function to
EPEC because statutory rule-making power was granted to Public Utility
Commission, not EPEC.  Further, Wet >N=
Wild alleged that even if the Public Utility Commission could delegate to EPEC,
EPEC=s
application of the penalties to one customer but not another in an arbitrary
and discriminatory manner through waivers was in violation of PURA.

Public
Utility Commission=s
Authority to Issue Substantive Rule 25.28(b)








The Public Utility
Commission, as a state administrative agency, is a creature of the Legislature
and has no inherent authority except those powers that the Legislature
expressly confers upon it and any implied powers reasonably necessary to
fulfill its express functions or duties. 
Public Util. Comm=n
v. City Pub. Serv. Bd. of San Antonio, 53 S.W.3d 310, 315 (Tex. 2001); see
Tex.Util.Code Ann. ' 12.001 (Public Utility Commission
exercises the jurisdiction and powers conferred by the Public Utility
Regulatory Act, codified at Tex.Util.Code
Ann. ' 11.001
et seq. (Vernon 1998)).  Under Section
36.001(a), the Public Utility Commission may establish and regulate rates of an
electric utility and may adopt rules for determining:  (1) the classification of customers and
services; and (2) the applicability of rates. 
See Tex.Util.Code Ann.
'' 36.001(a), 11.003(18)(Vernon
1998 & Supp. 2004).  ARate@
is broadly defined to include Aa
compensation, tariff, charge, fare, toll, rental, or classification that is
directly or indirectly demanded, observed, charged, or collected by an electric
utility for a service, product, or commodity . . . and a rule, practice, or
contract affecting the compensation, tariff, charge, fare, toll, rental, or
classification that must be approved by a regulatory authority.@ 
Tex.Util.Code Ann. ' 31.002(15)(Vernon Supp. 2004).  The parties do not dispute that the 5 percent
late payment penalty falls within the definition of Arate@ as defined in the Code.  In setting rates and rules affecting rates,
the Commission must ensure that each rate an electric utility makes, demands,
or receives is just and reasonable.  See
Tex.Util.Code Ann. ' 36.003(a)(Vernon 1998).  Section 36.003 of the Code provides in
relevant part that:

(b)        A rate may not be unreasonably
preferential, prejudicial, or discriminatory but must be sufficient, equitable,
and consistent in application to each class of consumer.

 

(c)        An electric utility may not:

 

(1)        grant an unreasonable preference or
advantage concerning rates to a person in a classification;

 

(2)        subject a person in a classification to
an unreasonable prejudice or disadvantage concerning rates; or 

 

(3)        establish or maintain an unreasonable
difference concerning rates between localities or between classes of service.

 

                                                              .               .               .

 

(e)        A charge to an individual customer for retail
or wholesale electric service that is less than the rate approved by the
regulatory authority does not constitute an impermissible difference,
preference, or advantage. 

 

Tex.Util.Code
Ann. '
36.003(b), (c), (e)(Vernon 1998).













The Commission=s late payment penalty rule states, AA one-time penalty not to exceed 5.0 %
may be charged on a delinquent commercial or industrial bill.  The 5.0 % penalty on delinquent bills may not
be applied to any balance to which the penalty has already been applied.@ 
16 Tex.Admin.Code ' 25.28(b).  In its appellate brief, Wet >N=
Wild argues that the Commission=s
5 percent late payment penalty rule, which is assessed only to delinquent commercial
or industrial bills, is illegal and invalid because Section 36.003 explicitly
prohibits any rate discrimination between classes and prohibits an electric
utility from establishing or maintaining an unreasonable difference concerning
rates between classes of service.[9]  In general, the code requires that rates
between classes of customers not be unreasonably preferential, prejudicial, or
discriminatory, but must be sufficient, equitable, and consistent.  See Texas Alarm and Signal Ass=n v. Public Utility Comm=n, 603 S.W.2d 766, 772 (Tex. 1980);
Tex.Util.Code Ann. ' 36.003(b).  Under the statute, the Commission has
discretionary authority to establish rates for classes of customers that are
literally discriminatory if the rates are not unreasonably discriminatory
as to that class of customers.  Public
Utility Comm=n v.
AT&T Communications of the Southwest, 777 S.W.2d 363, 366 (Tex.
1989).  Likewise, Section 36.003(c)(3)
prohibits only unreasonable rate differences between classes of
customers.  See Tex.Util.Code Ann. ' 36.003(c)(3).  Therefore, the Commission did not exceed its
statutory authority in issuing Substantive Rule 25.28(b) nor is the rule as
written contrary to other governing statutory provisions.

Illegal
Delegation of Power to Impose A Late Payment Penalty

Wet >N=
Wild next argues that the Public Utility Commission illegally delegated to EPEC
the power to impose or not impose a late payment penalty, which constitutes Arate making,@
a function delegated by the Legislature to the Commission, not to EPEC.[10]  Wet >N= Wild=s
primary contention is that Rule 25.28(b) provides an electric utility with
discretion to charge a one-time late payment penalty which may be 5 percent or
less and the discretion not to charge the penalty at all.  In its motion and on appeal, EPEC asserts
that its Commission-approved tariff, which it submitted as summary judgment
evidence, establishes that the 5 percent payment penalty was not left to its
discretion, but rather the Commission specifically authorized EPEC to charge
the penalty in the uniform rate schedule of the tariff.








Under Section
32.101 of the Texas Utilities Code, an electric utility is required to file a
tariff and as part of that tariff it must file each rule that relates to or
affects the rate of the utility or a utility service, product, or commodity
furnished by the electric utility.  See
Tex.Util.Code Ann. ' 32.101(b)(Vernon 1998); see also
Southwestern Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002); Southwestern
Bell Telephone Co. v. Metro‑Link Telecom, Inc., 919 S.W.2d 687, 692
(Tex.App.‑-Houston [14th Dist.] 1996, writ denied)(filed tariffs govern a
utility=s
relationship with its customers and have the force and effect of law, until
suspended or set aside).  According to
the affidavit of Jose Provencio, EPEC=s
manager of economic and rate research, EPEC=s
governing tariff was filed with the Commission and incorporates rate schedules
that have been approved by the Commission and apply to Wet >N=
Wild and its other customers in the Texas service area.  The EPEC tariff contains the rules and
regulations regarding electric service, including those related to bills for
service.  The tariff states, AA one-time penalty of five (5) percent
may be made on delinquent commercial and industrial bills.  No penalty shall be applied to delinquent
residential bills.  The five (5) percent
penalty on delinquent commercial and industrial bills may not be applied to any
balance to which the penalty was applied in a previous billing.@ 
EPEC=s summary
judgment evidence shows that the Commission approved of EPEC=s rule on late payment penalty and that
its rule was not contrary to Rule 25.28(b). 
Therefore, as a matter of law, EPEC established that the Commission did
not illegally delegate its rate-making authority to EPEC.

EPEC
Standards for Imposing the 5 Percent Late Payment Penalty

Wet >N=
Wild contends EPEC acted arbitrarily in charging late fees to some customers
and not to others in the form of waivers. 
Wet >N= Wild asserts that EPEC=s application of the 5 percent
late payment penalty rule violates Section 36.003 of the Code, which prohibits
an electric utility from granting Aan
unreasonable preference or advantage concerning rates to a person in a
classification@ and from
subjecting Aa person
in a classification to an unreasonable prejudice or disadvantage concerning
rates.@  See Tex.Util.Code
Ann. '
36.003(c)(1), (2) (Vernon 1998).  Wet >N=
Wild also argues there remain genuine issues of fact concerning EPEC=s waiver policies and actions.

 








In deposition
testimony, Joe Garibay testified that currently he was EPEC=s manager of customer information
systems, but prior to this position, he was its supervisor of revenue
collections and dealt with billing, collection, and delinquency issues.  In discussing situations where charged late
fees may be waived by EPEC customer service, Mr. Garibay stated:

Sometimes a commercial customer will
call us and tell us, you know, >We
had issues with the mail,=
or something like that, you know.  We
usually grant one waiver every 12 months for a good-paying customer, for lack
of a better term here.  We have a credit
criteria:  If a customer has not had a
delinquency, say, within -- more than two delinquencies in the last 12 months
and they have just, what we call, a billing area -- their president left,
couldn=t sign
the check, so the person who issued the checks was out of the office and couldn=t get them to us, and they tell us, >Hey, we had an issue this one time,
sorry about it, we want it waived=
-- they can send it up and Customer Service will usually send something to me
and I=ll go
ahead and waive it for that one time.  If
it becomes frequent, we stop doing it.  I
can say, >You
can=t have more than two
delinquencies.  You can only do this once
every 12 months.=

 

If we have a
payment error, we do it.  We=ve been known to do it if the
commercial customer has called us in and informed us prior that they might be
leaving.  We have a lot of customers that
do that -- >I=m going on vacation, I=m not going to be able to send you the
check this month.  We=ll get it to you next month.= 
Sometimes the reps don=t
mark it down correctly -- you know, it=s
assessed -- so we=ll go
back and waive those.  We try and do
various customer service functions for our customers depending on how the
situations warrant, but in the end I approve or disprove all of those. 

 








Under EPEC rules
and regulations in its Commission-approved tariff, EPEC may assess a one-time
5 percent penalty on a delinquent commercial or industrial bill.  Wet >N= Wild argues that EPEC=s waiver actions are illegal under
Section 36.003 of the Code.  While we
agree with Wet >N= Wild that under subparagraph (c) of
Section 36.003 an electric utility may not grant an unreasonable preference or
advantage, subparagraph (e) provides that A[a]
charge to an individual customer for retail or wholesale electric service that
is less than the rate approved by the regulatory authority does not constitute
an impermissible difference, preference, or advantage.@  See Tex.Util.Code
Ann. '
36.003(c)(1), (2), (e)(Vernon 1998). 
Under the tariff, EPEC has the discretion to charge or not charge a late
payment penalty and in addition, under Section 36.003(e), charging less than 5
percent, in the case of waivers charging zero, does not constitute an
impermissible difference, preference, or advantage.  EPEC=s
waiver policy is not contrary to Section 36.003 provisions and therefore is not
illegal.

In its reply brief,
Wet >N= Wild argues that any waiver made under
Section 36.003 must comply with Section 36.004, which concerns the equality of
rates and services.  See Tex.Util.Code Ann. ' 36.004 (Vernon 1998).  Section 36.004(a) states, A[a]n electric utility may not directly
or indirectly charge, demand, or receive from a person a greater or lesser
compensation for a service provided or to be provided by the utility than the
compensation prescribed by the applicable tariff filed under Section 32.101
[tariff filing].@  Tex.Util.Code
Ann. '
36.004(a).  In this case, however, we
find that Section 36.004(a) is not controlling because the 5 percent late
payment penalty is not charged as Acompensation@ for electric service, but rather is a
penalty for delinquent payment of the principal balance.  Moreover, under the EPEC tariff it was
authorized to charge or not charge the 5 percent late payment penalty.  As a matter of law, EPEC established that it
had the authority to impose or not impose a 5 percent late payment penalty to
its commercial and industrial customers.

Wet >N=
Wild, however, contends there remain genuine issues of fact regarding EPEC=s waiver policies as applied, which
preclude summary judgment.  In its
summary judgment evidence, Wet >N= Wild provided an affidavit from Wet >N=
Wild=s
Executive Assistant Tracy Dannelley, in which she stated the following:








On August 12, 2002 at
about 3 or 4 p.m., I Tracy Dannelley, Executive Assistant, for Volcanic Gardens
Management Co. Inc. realized that our electric bills were due that day, and
that due to an oversight a check had not been written.  Checks drawn require both the signatures of
[Wet >N= Wild] president Berry H. Edwards and
Vice President Chandra Edwards.  Berry H.
Edwards was not on the premises and could not be reached at the time.  I then called The Customer Service Department
and explained to the lady our situation; that one of the check signors was not
on the premises and asked her if, in light of the circumstance, we would be
able to bring the payment one day late without having to pay a late fee.  The amount of the late fee would have been an
additional $929.29.  We had not been late
in our payments since July of 2000 and I had never received any published
material regarding late fees, and whether and under what circumstances these
could be waived, other than that 5% would be charged on late bills.  I then spoke to Chandra Edwards and she
decided we should go ahead and hand deliver the check to the El Paso Electric
Company with just her signature and hope that the bank would accept it even
though it was irregular on its face.  The
check did clear without incident.  A true
copy of that check is attached.

 

Reviewing this
evidence in Wet >N= Wild=s
favor, Ms. Dannelley=s
affidavit shows that on one occasion Wet >N= Wild discussed its inability to pay
its electric bill timely.  While
Ms. Dannelley did not request a waiver, it can reasonably be inferred that
EPEC=s
customer service representative did not offer any waiver to Wet >N=
Wild, that is, assuming that such waivers could be given prospectively.  Ms. Dannelley was not informed of EPEC=s waiver policy and it can be inferred
that if she had been informed, Wet >N= Wild would have requested some form of
waiver.  However, these facts do not
create a genuine issue of fact concerning the application of EPEC=s waiver policy because, Ms. Dannelley=s affidavit testimony clearly shows
that Wet >N= Wild suffered no late payment penalty
and in fact, timely paid its electric bill on that occasion.  Therefore, EPEC=s
waiver policies were not applicable to Wet >N= Wild. 
The summary judgment evidence presented did not create a genuine issue
of material fact precluding partial summary judgment in favor of EPEC on the
illegality claim.  Issue One is overruled
in its entirety.








For the reasons
stated above, we affirm the trial court=s
judgment.

 

 

July
29, 2004

DAVID WELLINGTON
CHEW, Justice

 

Before Panel No. 3

Barajas, C.J., Larsen, and Chew, JJ.











[1]
EPEC filed an answer, subject to a plea to the jurisdiction in which it
contended the Public Utility Commission had exclusive jurisdiction over Wet >N=
Wild=s cause
of action.  After the trial court denied
the plea, EPEC filed a writ of mandamus with this Court, which this Court
denied.  See In re:  El Paso Electric Company, No.
08-01-00101-CV, 2001 WL 258838 (Tex.App.‑-El Paso Mar. 15, 2001, orig.
proceeding)(not designated for publication).





[2]
From the record on appeal, it appears Wet >N= Wild added its usury claim in its
third amended petition as well as a usury class action claim.





[3]
A hearing was held on EPEC=s
first motion for partial summary judgment on January 9, 2003.  The transcript of that hearing has been
included as part of the record on appeal. 





[4]
In its eighth amended petition, Wet >N= Wild removed the Ausury class action@ claim and added a Aclass action for 5 percent >penalty charges=@
based on usurious and illegal late payment charges collected by EPEC.





[5]
On March 27, 2003, the trial court held a hearing on EPEC=s second motion for partial summary
judgment.  The hearing transcript has
been included as part of the record on appeal.





[6]
Substantive Rule 23.45 is the predecessor to Rule 25.28, amended and adopted
May 6, 1999, 24 Tex.Reg. 3315 (1999).  See
24 Tex.Reg. 3314 (1999)(New Rule
25.28 replaces Rule 23.45 of this title)(relating to Billing).  Both versions of the rule permit the 5
percent late payment penalty at issue in this cause and are substantively the
same in that regard.





[7]
In its motion, EPEC included as summary judgment evidence a section from the
rules and regulations concerning bills for service, which is contained in its
Public Utility Commission-approved tariff. 
The EPEC rule substantively tracks Rule 25.28(b) stating in relevant part,
AA one-time penalty of five (5) percent
may be made on delinquent commercial and industrial bills.  No penalty shall be applied to delinquent
residential bills.  The five (5) percent
penalty on delinquent commercial and industrial bills may not be applied to any
balance to which the penalty was applied in a previous billing.@





[8]
At the March 27, 2003 summary judgment proceeding, Wet >N= Wild clarified that it was not
questioning whether the Commission has a right to establish rates or that it
has a right to establish a late payment fee. 
Rather, Wet >N= Wild contended it was not done in
accordance with express provisions of the Code.





[9]
We observe that in addition to its complaint that the Commission=s rule is illegal on its face, Wet >N=
Wild argues on appeal that the rule is illegal as applied.  After reviewing Wet >N= Wild=s
ninth amended petition, we conclude Wet >N= Wild=s
cause of action challenged the rule as a violation of the Commission=s statutory authority Aas written,@
not as applied, and therefore, we do not address its contentions that the rule
illegally exceeds the Commission=s
statutory authority as it was applied to Wet >N= Wild.





[10]
We note that in addition to its complaint that the Commission illegally
delegated its rule making function to EPEC, Wet >N= Wild also argues on appeal that the
Commission=s rule
illegally delegates its authority to every other electric utility it
regulates.  After reviewing Wet >N=
Wild=s ninth
amended petition, we conclude Wet >N= Wild=s
cause of action as to illegal delegation was limited to EPEC, therefore, we do
not address Wet >N= Wild=s
complaint as to other electric utilities in the state.